[PUBLISH]

IN THE  UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 14, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14959

_____

D. C. Docket No. 05-00018 CV-J-20-MMH

BROTHERHOOD OF LOCOMOTIVE ENGINEERS
AND TRAINMEN GENERAL COMMITTEE OF
ADJUSTMENT CSX TRANSPORTATION
NORTHERN LINES,

Plaintiff-
Counter-Defendant-
Appellee,

versus

CSX TRANSPORTATION, INC.,

Defendant-
Counter-Defendant-
Appellee,

and

UNITED TRANSPORTATION UNION
BALTIMORE & OHIO SYSTEM C-T & E,

Defendant-
Counter-Claimant-
Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(July 14, 2006)**

Before TJOFLAT and BARKETT and GOODWIN[*], Circuit Judges.

GOODWIN, Circuit Judge:

This is an appeal from a summary judgment which set aside a Railway Labor arbitration award. We reverse and remand.

## BACKGROUND

Recent mergers of railway carriers, combined with revisions of routes, and modernization of equipment, created three pools of qualified and available railroad employees seeking selection to engine crews on the Northern Lines of CSX Transportation, Inc. ("CSXT") and three mutually inconsistent and competitive streams of contract-based seniority claims. These competing seniority claims were similar to, but not identical with, nationwide controversies over seniority in the wake of the vanishing caboose and reduced demand for freight conductors, firemen, hostlers, and other crew personnel made redundant by technical change.

_____

[*]Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting by designation.

The controversy that became the source of this appeal involved 43 new engine-crew hires (the "New Hires") who had been trained and released by merged carriers and hired by CSXT, purportedly during a period of local and temporary scarcity of qualified trainmen already on the CSXT payroll. The two relevant unions, Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment CSX Transportation Northern Lines ("BLET") and United Transportation Union Baltimore & Ohio System C-T&E ("UTU CGA"), each having its own seniority track, and each obligated to advance the seniority claims of its members, immediately claimed that their members deserved seniority preference. Every attempt to blend the competing seniority rankings into a single seniority roster to which CSXT, BLET and UTU CGA could agree failed. The last-straw event took place in May of 2001, when CSXT aborted its publication of seniority rosters including the New Hires, which representatives of BLET and UTU CGA had initially reviewed and approved, but which BLET subsequently demanded that CSXT rescind. The controversy went to arbitration by a National Railway Adjustment Board, with the first hearing on December 3, 2001.

After lengthy arbitration, an award was made that satisfied some, but not all of the parties. The controversy proceeded to the district court pursuant to the National Railway Labor Act, 45 U.S.C. § 153 First (q), which in due course

3

rejected the arbitration award and entered the judgment appealed from. The district court adopted generally the position favored by BLET, and UTU CGA, whose position had prevailed in the arbitration, brings this appeal.

## DISCUSSION

Both the Board Opinion and Award and the district court order vacating the award contain lengthy, and detailed, discussions of the factual and legal issues involved in this case. For judicial review purposes, however, only a few key points require discussion.

In his decision, the experienced arbitrator engaged in a thorough review and analysis of the applicable collective bargaining agreements, and concluded that they did not resolve the hiring and seniority issues posited by the parties. The arbitrator's first key finding was that the rosters published and subsequently revoked by CSXT in 2001 constituted a binding resolution of the dispute, and that CSXT was not justified in revoking the rosters after BLET and UTU CGA had acquiesced in their publication.

Furthermore, the arbitrator determined that CSXT did not comply with its contractual obligations when it retained the New Hires from outside the Northern Lines rather than promoting from within the ranks of displaced trainmen. This

4

finding significantly weakened BLET's argument that the 43 New Hires should receive preferential placement on the Northern Lines seniority rosters.

The arbitrator rejected the balance of BLET's post hoc objections to the 2001 rosters, reasoning that basic principles of contract law prohibited their revocation.

The district court vacated the award, concluding that the Board exceeded its jurisdiction in its placement of the New Hires on the Northern Lines engineer seniority rosters. Alternatively, the court found that the Board failed to comply with the National Railway Labor Act when it determined that the BLET's General Chairman did not have the authority to enter into the 2001 BLET Agreement, which gave rise to the publication of the revised rosters.

The district court declared the arbitrator's interpretation of the relevant contracts to be beyond the arbitrator's jurisdiction, in an attempt to fit its decision within the "extremely narrow" scope of judicial review allocated by the RLA to the federal courts when reviewing railway arbitration awards. However, the district court's recitation of the proper standard of review does not transform its substantive disagreement with the arbitrator into a sustainable decision.

An arbitral award may be vacated for failure "to conform, or confine itself, to matters within the scope of the division's jurisdiction . . . ." 45 U.S.C. § 153

5

First (q). "It is thus firmly established that courts will not review the substance of a labor arbitration award for ordinary error and that courts will not vacate an award because a judge might have reached a different result." See Loveless v. Eastern Air Lines, Inc., 681 F.2d 1272, 1276 (11th Cir. 1982). Substantive judicial review of an arbitral award is limited to a determination of whether the award is irrational, whether it fails to draw its essence from the collective bargaining agreement, or whether it exceeds the scope of the arbitrator's contractual authority. Id.; see also Norfolk & W. Ry. Co. v. Transp. Commmc'ns Int'l Union, 17 F.3d 696, 700 (4th Cir. 1994) (acknowledging that an award may not ignore the plain and unambiguous language of the contract, but "'[a]s long as the arbitrator is even arguably construing or applying the contract," the arbitrator's award must not be disturbed') (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

By the time of this arbitration, the parties could not even stipulate to the phrasing of the question(s) presented to the Special Board of Adjustment for decision. The arbitrator had to sort through volumes of claims supporting competing views of seniority rights in order to understand the claims. It is apparent that no solution to the seniority dispute could have satisfied both unions. Technology had rendered obsolete many of the jobs of senior trainmen, and the

employer was obligated to move them toward engine crew jobs consistent with realistic needs and qualifications, and in compliance with the relevant collective bargaining agreements made in an earlier time. Faced with the polarized positions of the two unions, the arbitrator attempted to find the more reasonable, to him, of several imperfect choices. No arbitrator, even one gifted with Solomonic wisdom, could have harmonized the terms of the relevant bargaining agreements. And for that reason, as demonstrated by the competing claims here, arbitration law wisely relies upon the experience, perspective, understanding of industrial practice, and knowledge of logistics and economics, of the officer chosen as arbitrator.

"Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator . . . ." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987).

Under the present circumstances, the arbitrator's award was within the statutory scope of the arbitration and within the Board's jurisdiction. Accordingly, the award was due to be enforced when challenged in the district court.

REVERSED AND REMANDED.

7