**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MCI CONSTRUCTORS, LLC,

　　　　　*Plaintiff-Appellant,*

　　　　　v.

CITY OF GREENSBORO, a
municipality, organized under the
laws of the State of North
Carolina,

　　　　　*Defendant-Appellee,*

　　　　　and　　　　　　　　　　　No. 09-1600

HAZEN AND SAWYER, P.C., a New
York Corporation,

　　　　　*Defendant,*

　　　　　v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, a
Pennsylvania Corporation,

　　　　　*Third Party Defendant.*

MCI CONSTRUCTORS, LLC,

*Plaintiff,*

v.

CITY OF GREENSBORO, a
municipality, organized under the
laws of the State of North
Carolina,

*Defendant-Appellee,*

and

HAZEN AND SAWYER, P.C., a New
York Corporation,

*Defendant,*

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, a
Pennsylvania Corporation,

*Third Party Defendant-Appellant.*

No. 09-1606

Appeals from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Jr., District Judge.
(1:99-cv-00002-WO-WWD)

Argued: April 8, 2010

Decided: July 1, 2010

Before TRAXLER, Chief Judge, and DUNCAN and
DAVIS, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Chief Judge Traxler and Judge Davis joined.

---

**COUNSEL**

**ARGUED:** C. Allen Foster, GREENBERG TRAURIG, LLP, Washington, D.C., for MCI Constructors, LLC. William P. H. Cary, George W. House, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Greensboro, North Carolina, for City of Greensboro. **ON BRIEF:** Eric C. Rowe, David Samuel Panzer, GREENBERG TRAURIG, LLP, Washington, D.C., for MCI Constructors, LLC; John M. Gillum, MANIER & HEROD, Nashville, Tennessee, for National Union Fire Insurance Company of Pittsburgh, PA. Michael D. Meeker, Joseph A. Ponzi, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Greensboro, North Carolina, for City of Greensboro.

---

**OPINION**

DUNCAN, Circuit Judge:

This appeal arises from a contract dispute concerning the construction of a wastewater treatment plant. This dispute has been before us once before. *See MCI Constructors, Inc. v. City of Greensboro*, 125 F. App'x 471 (4th Cir. 2005). Following that decision, all concerned parties agreed to submit the outstanding issues to arbitration. Arbitration yielded an award to Appellee City of Greensboro (the "City") of $14,939,004. The district court then granted the City's motion to confirm that award. This appeal followed. For the reasons that follow, we affirm.

I.

A.

On January 16, 1996, the City entered into a contract with Appellant MCI Constructors, LLC ("MCI") for the expansion and upgrade of a wastewater treatment plant in Greensboro, North Carolina, for a cost of roughly $29 million. The contract explains that "[t]o prevent disputes and litigations, the City Manager shall . . . decide every question which may arise relative to the fulfillment of the Contract on the part of the Contractor." J.A. 227. As required by North Carolina law, after signing the contract, MCI obtained a performance bond from National Union Fire Insurance Company ("National Union") of Pittsburgh, Pennsylvania, which incorporated the terms of the contract between the City and MCI and guaranteed that MCI would perform the contract.

When construction of the wastewater plant became substantially delayed, the City terminated the contract. MCI then commenced this diversity action in the Middle District of North Carolina against the City and Hazen and Sawyer, P.C. ("Hazen and Sawyer"), the engineering firm that designed the project. The complaint alleged, inter alia, claims for breach of contract, negligent misrepresentation, and wrongful termination. In response, the City filed a counterclaim for breach of contract, and a third-party complaint against National Union on its bond. The district court declined to entertain most of these claims, concluding that the contract required that all disputes regarding the fulfillment of the contract be resolved by the City Manager. Accordingly, the parties submitted their claims to the City Manager.

After a two-day hearing, on April 16, 2002, the City Manager issued an order. In that order, the City Manager held that the City had properly terminated MCI for cause, and denied MCI's wrongful termination claim. Thereafter, a hearing was held to determine the City's damages. After that proceeding,

on February 5, 2003, the City Manager issued an order finding that MCI owed the City $13,377,842.73.

The City then filed a motion for summary judgment, seeking to enforce the City Manager's decision. National Union filed a cross-motion for summary judgment seeking to avoid liability as the surety for payment of the $13,377,842.73. On March 10, 2004, after finding that the City Manager's decision was not "influenced by fraud, bad faith, or gross mistake," the district court issued an order granting summary judgment in favor of the City on all of MCI's claims. J.A. 2510. The district court determined that "the City Manager's award [was] a complete defense to [MCI's] claims."[1] *Id.* Further, having found the City Manager's award binding and enforceable, the district court awarded judgment to the City on its counterclaim. Thus, the district court held that the City was to recover from MCI the sum of $13,377,842.73. In a separate order, the district court held that the City Manager's award was enforceable against National Union.

MCI and National Union appealed the district court's rulings. On appeal, we "affirm[ed] all the rulings of the district court except its application of the 'fraud, bad faith, or gross mistake' standard, which [the district court] applied to review the decision of the City Manager." *MCI Constructors*, 125 F. App'x at 474. Specifically, we held that

> since the City Manager signed the contract for the City and in essence was adjudicating his own performance, rights, and liabilities under the contract, North Carolina law requires that the City Manager's performance be measured by a standard of objective

---

[1]The court recognized that in a previous opinion it had not required MCI to submit its claims for breach of warranty and negligent misrepresentation to the City Manager, but nevertheless granted judgment because those "claims were within the ambit of the City Manager's contractual decision-making authority." J.A. 2511.

> reasonableness "based upon good faith and fair play"
> —a standard that must be read into the contract so as
> to prevent the contract from being rendered illusory.

*Id.* Thus, we reversed and vacated the judgment insofar as the judgment depended on application of this standard.

### B.

Trial was then set for February 6, 2006. On January 26, 2006, however, the City, MCI, and National Union advised the district court that they had "entered into a binding Arbitration Agreement to resolve all issues between them" arising from the contract and that "[u]pon conclusion of the arbitration, all matters currently set for trial w[ould] be moot." J.A. 2621. In that agreement, the parties stipulated that an arbitration panel would be selected by the parties, that the "rules would be standard AAA Complex Commercial or JAMS rules," J.A. 2634, and that the "[p]roceedings [would] be bifurcated between liability and damages," J.A. 2635. Further, the parties agreed that "[a]t the conclusion of the arbitration, the award [would] be confirmed and a judgment [would be] entered," and that "[u]pon confirmation, MCI [would] take a voluntary dismissal with prejudice of all claims and proceedings against the City . . . and the City [would] take a voluntary dismissal with prejudice of all claims against MCI." J.A. 2637. Accordingly, as requested by the parties, the district court stayed the case pending arbitration.

On September 26, 2006, the parties presented their liability arguments to a panel of three arbitrators. On June 20, 2007, the arbitration panel issued an award finding that "[t]he City's termination of MCI's performance under [the] contract . . . for expansion of a waste water treatment plant . . . was for cause." J.A. 4113. In response, on September 17, 2007, MCI filed a motion with the district court seeking to vacate the award. Specifically, MCI argued, inter alia, that "the Panel refused to hear material evidence[,] . . . repeatedly . . . refus[ed] to con-

sider [its] submissions and [did] not allow[ ] [it] to respond to the City's Closing Arguments in the Liability Phase of the Arbitration." J.A. 4120. Further, MCI argued that "the City obtained the 'Award' by undue means by misrepresenting facts outside the record during Closing Arguments and acting to prevent MCI from being able to respond." *Id.* At MCI's request, however, the district court issued an order explaining that it would not entertain MCI's motion until thirty days after the arbitration was complete.

The parties then presented their damages arguments to the arbitration panel. On April 17, 2008, the arbitration panel found that "the City [was] entitled to recover from MCI" $14,939,004. J.A. 7403. Contending that the award was unclear, on April 24, 2008, MCI sent an email to the arbitration panel, requesting the panel to modify it. Specifically, MCI argued that the arbitration panel failed to deduct the contract balance from the award, and that the arbitration panel was required to provide a reasoned award that addressed the disposition of all the claims submitted. On May 8, 2008, the panel issued an order denying MCI's request. The panel explained that because none of the parties requested a reasoned award prior to the panel's appointment, it was not obligated to provide one. Further, the panel noted that "[t]he Damages Award did not contain any errors." J.A. 7416.

Thereafter, the City moved to have the liability and damages awards confirmed by the district court. MCI and National Union moved to vacate the arbitration awards. In the alternative, MCI also moved to remand the damages award. On the substantive motions, the district court received a total of twenty-two briefs and held oral arguments. After reviewing all these materials, on March 9, 2009, the district court issued two opinions denying MCI's and National Union's motions. Thereafter, on April 28, 2009, the district court entered an order confirming the arbitration awards. The court also entered final judgment pursuant to Federal Rule of Civil Procedure 54(b). MCI and National Union then appealed.

## II.

On appeal, MCI and National Union present three main arguments. First, they argue that the district court erred in certifying the judgment as final under Rule 54(b). Second, they maintain the district court should have vacated the awards because the liability award was obtained through undue means, the arbitration panel exceeded the scope of its powers to issue the damages award, and the damages award does not draw its essence from the parties' contract. Finally, they contend that the district court should have remanded the damages award because the award fails to specify whether it includes the contract balance, and because the arbitrators were required to issue a reasoned award. We consider each argument in turn.[2]

## A.

We turn first to MCI and National Union's argument that the district court erred in certifying the judgment as final under Federal Rule of Civil Procedure 54(b). We review the district court's Rule 54(b) certification for abuse of discretion. *Fox v. Baltimore City Police Dep't*, 201 F.3d 526, 531 (4th Cir. 2000); *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1336 (4th Cir. 1993). In doing so, we recognize that our role is "not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980).

Federal Rule of Civil Procedure 54(b) provides that "[w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may

---

[2]MCI and National Union raised several other arguments in their briefs. Any arguments not discussed in this opinion were found to be without merit.

direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "The task which the district court must follow to effectuate a Rule 54(b) certification involves two steps." *Braswell*, 2 F.3d at 1335. "First, the district court must determine whether the judgment is final." *Id.* A judgment "must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright*, 446 U.S. at 7 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). "Second, the district court must determine whether there is no just reason for the delay in the entry of judgment." *Braswell*, 2 F.3d at 1335. In determining whether there is no just reason for delay in the entry of judgment, factors the district court should consider, if applicable, include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final;[3] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

---

[3]On this factor, the Supreme Court has explained "that counterclaims, whether compulsory or permissive, present no special problems for Rule 54(b) determinations; counterclaims are not to be evaluated differently from other claims." *Curtiss-Wright Corp.*, 446 U.S. at 9. Like other claims, the Court has explained, "their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought." *Id.*

*Braswell*, 2 F.3d at 1335-36 (footnote call number added) (quoting *Allis-Chalmers Corp. v. Phila. Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975)).

MCI and National Union argue that because "[t]he record . . . is replete with examples of [Hazen and Sawyer]'s failure to monitor and control the completion costs, resulting in costs that the City never should have incurred and that MCI should not be called upon to pay," the district court erred in entering a Rule 54(b) certification. Appellants' Br. at 58. Instead, they contend, the district court should have held in abeyance the motion to certify the judgment as final pending the resolution of MCI's claims against Hazen and Sawyer, particularly since "both MCI and the City agree that the responsibility for improperly certified charges of the completion contractors must fall upon [Hazen and Sawyer]." Appellants' Br. at 59. In essence, they argue that there was a just reason for delaying the entry of judgment here.[4]

Our review of the record supports the conclusion that there was no just reason for delaying the entry of judgment here. First, "[a]lthough the present matter and the Hazen [and] Sawyer litigation arise out of a common set of facts, i.e., the circumstances surrounding City's termination of MCI's performance under the Contract," J.A. 7947-48, the relationship between the adjudicated and unadjudicated claims was severed by virtue of the parties' own admissions, such that the

---

[4]MCI and National Union do not seem to dispute that the judgment here was final. Nevertheless, we note that the parties, in their Joint Motion to Stay, stipulated as much to the district court. They submitted that the arbitration panel would resolve "all outstanding issues between them," J.A. 2621, that "[u]pon conclusion of the arbitration, all matters . . . set for trial w[ould] be moot," *id.*, that "[a]rbitration w[ould] be final and binding," J.A. 2634, and that "[a]t the conclusion of the arbitration, the award . . . [would] be confirmed and a judgment [would be] entered," J.A. 2637. In accordance with this agreement, the arbitration panel stated in its damages award, "This AWARD is in full and final settlement of all issues submitted in the Damages Phase of this Arbitration." J.A. 7403.

results of the arbitration have no binding or preclusive effect on the litigation of the remaining claims against Hazen and Sawyer. The parties represented to the district court that "[u]pon conclusion of the arbitration, all matters . . . set for trial w[ould] be moot," and that "[f]urther proceedings involving Hazen [and] Sawyer c[ould] take place at that time." J.A. 2621; *see also* J.A. 2628 ("Defendant Hazen [and] Sawyer . . . has already consented to bifurcation of issues involving it until after the resolution of certain claims between MCI and the City, which will now be resolved through arbitration instead of litigation in this Court."). Second, MCI and National Union point to nothing in the record, nor are we able to find anything, to suggest that review of the issues here might be mooted by future developments in the district court. On the contrary, "the possibility that [we] might be obliged to consider the same issue[s] [explored here] a second time," *Braswell*, 2 F.3d at 1335, is unlikely because all that remains to be resolved is whether the arbitration awards are valid, and Hazen and Sawyer was not a party to the arbitration agreement and did not participate in the arbitration proceedings. Third, MCI and National Union have not identified the presence or absence of a pending claim or counterclaim which could result in a set-off against the judgment made final by the district court. Finally, we do not believe any "miscellaneous factors such as delay, economic and solvency considerations, . . . frivolity of competing claims, expense, and the like" change the analysis here. *Braswell*, 2 F.3d at 1336.

Accordingly, we hold that the district court did not abuse its discretion in certifying its judgment as final under Rule 54(b).

## B.

We next consider MCI and National Union's argument that the district court should have vacated the arbitration awards. In order for a reviewing court to vacate an arbitration award, the moving party must sustain the heavy burden of showing

one of the grounds specified in the Federal Arbitration Act (the "FAA") or one of certain limited common law grounds.[5] *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). The FAA provides that a court may only vacate an arbitration award on one of the following grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The permissible common law grounds for vacating such an award "include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Patten*, 441 F.3d at 234.

---

[5]The district court noted that the common-law grounds may or may not be available to MCI after *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). In *Hall Street*, the Supreme Court held that "the statutory grounds are exclusive," *id.* at 578, and that "the FAA confines its expedited judicial review to the grounds listed in 9 U.S.C. §§ 10 and 11," *id.* at 592. Because we find that MCI and National Union's common-law arguments do not entitle them to relief, we need not decide whether courts may still vacate an arbitration award if the award fails to draw its essence from the controlling agreement, or if it flows from a manifest disregard of the applicable law.

MCI and National Union contend in this appeal that the district court should have vacated the arbitration awards under several of the permissible statutory and common law bases. Specifically, they contend that the liability award was procured by undue means in violation of § 10(a)(1) of the FAA. They also argue that to issue the damages award, the arbitration panel exceeded the scope of its powers. Finally, they assert that the damages award does not draw its essence from the contract. We consider each argument in turn.

In doing so, we review for clear error the district court's findings of fact and review de novo its conclusions of law, including its decision not to vacate the arbitration awards. *Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC*, 519 F.3d 200, 207 (4th Cir. 2008). We are mindful that "[o]ur authority to review the arbitration award[s] at issue, like the authority of the district court to do the same, is 'substantially circumscribed.'" *Id.* (quoting *Patten*, 441 F.3d at 234). As we have said previously, "the scope of judicial review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (citation and internal quotations omitted).

1.

We first consider whether the liability award was "procured by . . . undue means" in violation of § 10(a)(1). 9 U.S.C. § 10(a)(1). "The term 'undue means' has generally been interpreted to mean something like fraud or corruption." *Three S Delaware*, 492 F.3d at 529; *see also Nat'l Cas. Co. v. First State Ins. Group*, 430 F.3d 492, 499 (1st Cir. 2005) ("The best reading of the term 'undue means' under the maxim *noscitur a sociis* ["it is known from fellows or allies"] is that it describes underhanded or conniving ways of procuring an

award that are similar to corruption or fraud, but do not precisely constitute either."). Typically, to prove that an award was procured by undue means, the party seeking vacatur

> must show that the fraud [or corruption] was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence.

*A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992); *see also Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988) (collecting cases).

MCI and National Union contend that the arbitration awards here were procured through undue means because the City engaged in unfair and fraudulent actions. They explain that the City (1) actively sought to prevent MCI from presenting the facts of the case de novo; (2) misrepresented facts to the arbitration panel; and (3) elected to present its principal arguments on rebuttal, thereby robbing MCI of its opportunity to present a meaningful response at closing. Thus, they maintain, the arbitration awards should be vacated under § 10(a)(1).

MCI and National Union's difficulty, however, is that no court has ever suggested that the term "undue means" should be interpreted to apply to actions of counsel that are merely legally objectionable. *See A.G. Edwards*, 967 F.2d at 1403-04 (defining "undue means" as conduct "that is immoral if not illegal"; holding that the term does not apply to defendant's raising of frivolous defenses during arbitration, or "sloppy or overzealous lawyering").

Further, while there is some evidence in the record to support MCI and National Union's assertions that the City presented its main arguments on rebuttal and that—on at least one occasion—it referred to evidence outside the record, Appel-

lants fail to establish that these actions led to the procurement of the award. *See PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 994 (8th Cir. 1999) ("[T]here must be some causal relation between the undue means and the arbitration award."); *Bonar*, 835 F.2d at 1385 (finding an arbitration award was procured through undue means where "[t]he arbitrators' written award, although brief, reflects the influence of [the fraudulent] testimony"); *see also Black's Law Dictionary* 1327 (9th ed. 2009) (defining "procurement" as "the act of getting or obtaining something or of bringing something about"). As § 10(a)(1) "does not provide for vacatur in the event of any fraudulent conduct, but only where the *award was procured* by corruption, fraud, or undue means," *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990) (internal quotations omitted) (emphasis in original), and MCI and National Union have not proffered any evidence that the undue means in dispute actually factored into the arbitration panel's liability determination,[6] we find the district court did not err in denying MCI and National Union's motion to remand on this basis.[7]

---

[6] MCI and National Union argue that requiring the showing of a causal connection would impose an impossible burden because the arbitration panel did not state the reasons for its decision in this case. We disagree. Arbitration panels are not required to explain their decisions. *See Wilko v. Swan*, 346 U.S. 427, 436 (1953), *overruled on other grounds*, *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). Thus, eliminating the need to prove a causal connection whenever an award is unexplained would effectively read the "procured by" requirement out of the statute, and would be inconsistent with the limited nature of judicial review of arbitration awards. *See A.G. Edwards*, 967 F.2d at 1403. Such a result could lead to parties attempting to circumvent the narrow scope of our review by purposefully declining to request reasoned awards and thereby avoiding the burden of showing the "procured by" requirement if they later chose to challenge the award.

[7] MCI and National Union also argue that the district court erred in confirming the award, because by breaching the arbitration agreement, the City lost the ability to proceed under that agreement, and consequently, any award arising out of that agreement cannot be enforced. Specifically, MCI and National Union maintain that the City breached the arbitration

2.

We next determine whether the arbitration panel exceeded the scope of its powers in issuing the damages award. MCI and National Union argue that the arbitration panel exceeded its powers in awarding any money to the City, because there is no reasonable interpretation of the contract that excused the City's failure to comply with Articles 9.11 and 11 of the contract. They assert that the City's failure to comply with these articles bars the City from recovering any money from MCI and National Union.

MCI and National Union's argument flows from their interpretation of specific provisions of the contract. Article 15, entitled, "Suspension of Work and Termination," provides that

> if CONTRACTOR persistently fails to perform the
> Work in accordance with the Contract Documents

---

agreement by actively seeking to prevent MCI from fully and fairly presenting its case to the arbitrators, and by preventing MCI from arguing the facts of the case de novo. Thus, they maintain the district court should not have confirmed the award because there no longer was a valid agreement between the parties to arbitrate. In support of this argument, MCI and National Union rely on *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999), in which we held that a party "materially breached the arbitration agreement by promulgating rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith."

*Hooters* is distinguishable. In *Hooters*, this court emphasized that it "only reach[ed] the content of the arbitration rules because their promulgation was the duty of one party," *id.* at 941, and the case involved the unique situation where the procedural rules were "so one-sided that their only possible purpose [was] to undermine the neutrality of the proceeding," *id.* at 938. By contrast, here MCI received a fundamentally fair hearing and the arbitrators applied the procedural rules governing the arbitration in an impartial manner. Further, there is nothing to indicate that one party, namely, the City, was solely responsible for selecting the arbitral rules. Thus, we find *Hooters* inapposite and MCI and National Union's argument without merit.

> . . . OWNER may, after giving CONTRACTOR . . . seven days' written notice . . . terminate the services of CONTRACTOR . . . and finish the Work as OWNER may deem expedient. In such case CONTRACTOR shall not be entitled to receive any further payment until the Work is finished. . . . If [all] claims, costs, losses and damages [arising out of or resulting from completing the Work] exceed [the] unpaid balance [of the Contract Price], CONTRACTOR shall pay the difference to OWNER. Such claims, costs, losses and damages incurred by OWNER will be reviewed by ENGINEER as to their reasonableness *and when so approved by ENGINEER incorporated in a Change Order*, provided that when exercising any rights or remedies under this paragraph OWNER shall not be required to obtain the lowest price for the Work performed.

J.A. 207 (emphasis added). There is evidence in the record showing that the City detailed its claims, costs, losses and damages, submitted them to Hazen and Sawyer, and that Hazen and Sawyer approved those claims, costs, losses and damages in a Change Order, which ultimately changed the Contract Price. MCI and National Union note, however, that pursuant to Article 11, entitled "Change of Contract Price," the Contract Price could only be changed if "[the] claim for an adjustment in the Contract Price [was] based on written notice delivered by the party making the claim to the other party and the ENGINEER," or if the parties could not agree on the amount involved, the "claim[ ] for adjustment in the Contract Price [was] determined by ENGINEER in accordance with [Article] 9.11."[8] J.A. 198-99. Article 9.11 states:

---

[8]As further evidence of this requirement, MCI and National Union point to Article 1.9 of the contract. That article defines a "Change Order" as "[a] document recommended by ENGINEER, which is signed by CONTRACTOR and OWNER and authorizes . . . an adjustment in the Contract Price." J.A. 179. MCI and National Union explain that MCI would have signed this Change Order only if it had been submitted to Hazen and Sawyer pursuant to the requirements of Articles 9 and 11.

"Claims, disputes and other matters relating to . . . the interpretation of the requirements of the Contract Documents pertaining to the performance and furnishing of the Work and Claims under Articles 11 and 12 in respect of changes in the Contract Price . . . will be referred initially to ENGINEER in writing with a request for a formal decision." J.A. 197.

Because MCI and the City did not agree on the amount of the Contract Price, MCI and National Union maintain that the City was required to submit this issue to Hazen and Sawyer pursuant to Article 9.11. The City, however, never did so, and thus, MCI and National Union insist that, pursuant to Article 11.2, the City was barred from adjusting the Contract Price, especially since Article 11 specifies that "*[n]o claim for an adjustment in the Contract Price will be valid if not submitted in accordance with . . . paragraph 11.2.*" J.A. 198-99 (emphasis added). MCI and National Union maintain that, without an adjustment to the Contract Price, the City cannot be entitled to any monetary award.

Contrary to MCI and National Union's assertions, however, the contract can be reasonably interpreted not to require the City to submit its claim for an adjustment in the Contract Price to Hazen and Sawyer, as otherwise required by Articles 9.11 and 11 of the contract. *See Walton v. City of Raleigh*, 467 S.E.2d 410, 412 (N.C. 1996) ("Parties can differ as to the interpretation of [contract] language without its being ambiguous."). Article 15 is divided into two parts: when the City may *suspend* the work, and when the City may *terminate* MCI's services. Under Article 15.1, entitled "OWNER May Suspend Work," there is a direct reference to Article 11: "CONTRACTOR shall be allowed an adjustment in the Contract Price . . . directly attributable to any . . . suspension if CONTRACTOR makes an approved claim therefor as provided in Articles 11 and 12." J.A. 206. By contrast, Article 15.2, entitled "OWNER May Terminate"—the article implicated here—makes *no* mention of Article 11, thereby suggesting that the contract did not require the City to submit Change

Order disputes to Hazen and Sawyer when termination was involved. *See Marcoin, Inc. v. McDaniel*, 320 S.E.2d 892, 897 (N.C. App. 1984) ("[A] contract must be construed as a whole, considering each clause and word with reference to all other provisions and giving effect to each whenever possible."). Thus, the City's failure to comply with Articles 9.11 and 11 of the contract, under this interpretation of the contract, would not bar recovery.

Even if Articles 9.11 and 11 were controlling here, we find that MCI and National Union would not be entitled to relief. We have held as a matter of law that "neither misinterpretation of a contract nor an error of law constitutes a ground on which an award can be vacated." *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193-94 (4th Cir. 1998) (internal quotations omitted). As the City notes, MCI and National Union's argument that the arbitration panel exceeded its authority is essentially a disagreement with the arbitration panel's construction of the contract. MCI and National Union present no facts to support their allegation that the arbitration panel exceeded its authority, and the evidence reveals that the parties' claims were referred to the arbitration panel pursuant to an arbitration agreement, signed by the parties independently of the contract, which authorized the panel to resolve "all outstanding issues between them," J.A. 2621, and to issue a decision that "w[ould] be final and binding," J.A. 2634. In fact, this exact question—that is, the validity of the Change Order and whether, under Articles 9.11 and 11, the City was required to submit the issue of the Contract Price to Hazen and Sawyer first—was decided by the arbitration panel and factored into the damages award. "As long as the arbitrator[s] [are] even arguably construing or applying the contract," as they were here, their awards will not be disturbed. *Norfolk & W. Ry. Co. v. Transp. Commc'ns Int'l Union*, 17 F.3d 696, 700 (4th Cir. 1994). We thus find the arbitration panel did not exceed the scope of its powers in issuing the damages award.

3.

MCI and National Union maintain that the damages award must be vacated because that award irrationally disregards unambiguous provisions of the contract. They contend that the arbitration panel's award does not "draw its essence" from the parties' contract because it does not discuss whether arguments offered by MCI regarding Articles 9.11 and 11 of the contract defeated the City's damages claim. In support of this argument, MCI and National Union cite *Clinchfield Coal Co. v. District 28, United Mine Workers of America*, 720 F.2d 1365, 1369 (4th Cir. 1983), in which we held that "[w]here . . . the arbitrator fails to discuss critical contract terminology, which terminology might reasonably require an opposite result, the award cannot be considered to draw its essence from the contract."

*Clinchfield* is distinguishable. In that case, we found the arbitration award did not draw its essence from the contract because the arbitrator's decision seemed impossible to square with certain provisions of the contract. *See id.* ("[A] reasonable interpretation of [the operative] clause . . . require[s] a contrary result."). Here, as explained above, Articles 9.11 and 11 of the contract do not require an opposite result from that reached by the arbitration panel, and thus, the panel was not required to discuss these articles in its awards. *See Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 230 (4th Cir. 1991) ("We do not and need not decide whether any of these analyses constitute the best or most accurate reading of the contract. We hold only that they are plausible readings of the agreement. . . . Consequently, . . . we cannot say that the arbitration award failed to draw its essence from the agreement.").

Further, it bears noting that an arbitration award "does not fail to draw its essence from the agreement merely because a court conclude[s] that an arbitrator has misread the contract." *Patten*, 441 F.3d at 235 (internal quotation marks omitted). As

explained above, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) (internal quotations omitted).

We thus find that the district court did not err in denying MCI and National Union's motion to vacate the arbitration awards. The record does not support MCI and National Union's arguments that the liability award was procured by undue means. Nor have MCI and National Union sufficiently shown that to issue the damages award, the arbitration panel had to exceed the scope of its powers, or that this award does not draw its essence from the contract.

### C.

Finally, we consider MCI and National Union's argument that the district court should have remanded the case to the arbitrators. MCI and National Union present two arguments on this issue. First, they maintain that the damages award is ambiguous and thus remand was required. Second, they contend that the arbitration agreement required the arbitration panel to issue a reasoned award, and as such, the district court erred in denying MCI's motion to remand. We consider each argument in turn. We review the district court's decision not to remand the award to the arbitration panel for an abuse of discretion. *Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183, 190 (4th Cir. 2010).

### 1.

We first consider MCI and National Union's argument that because the arbitration panel did not specify the basis for its damages award, that award is ambiguous, thus requiring remand to the arbitrators. MCI and National maintain that "[r]emand is required because the [damages award] fails to

answer how much must be paid to satisfy the award." Appellants' Br. at 44. MCI and National Union explain that the award provides that the City "is entitled to recover from MCI the sum of $14,939,004," *id.*, but does not explain whether MCI must pay that full amount to the City, or whether that amount must be processed under Article 15.2 of the contract, which provides that "[i]f . . . claims, costs, losses and damages exceed [the] unpaid balance, CONTRACTOR shall pay the *difference* to the OWNER." J.A. 207 (emphasis added). Because the arbitration panel did not explain whether it subtracted the unpaid balance of the Contract Price from the Award ($9,667,357), MCI and National Union insist that the award must be remanded for further explanation—that is, to explain whether MCI owes $14,939,004 or $5,271,647. We disagree.

It is well settled that arbitrators are not required to disclose the basis upon which their awards are made and courts will not look behind a lump-sum award in an attempt to analyze their reasoning process. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960); *see also Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 151 (4th Cir. 1994) ("[A]rbitrators need not state reasons for reaching a particular result"); *In re Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*, 867 F.2d 130, 135 (2d Cir. 1989) ("[A]rbitrators may render a lump sum award without disclosing their rationale for it, and . . . when they do, courts will not inquire into the basis of the award unless they believe that the arbitrators rendered it in 'manifest disregard' of the law or unless the facts of the case fail to support it.") (internal quotations omitted); *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532 (D.C. Cir. 1989) ("We reject the idea that a lump-sum award can be rejected for want of explanation (or, what is in effect almost the same thing, remanded for an explanation) in the absence of facts making it appear probable that the arbitrators committed an error justifying vacation of the award.").

Further, this exact issue was presented to the arbitration panel in MCI's email to the panel on April 24, 2008. *See* J.A. 7409 ("[I]t appears that th[e] Panel failed to deduct MCI's $9,667,357 Contract Balance from the $14,939,004 amount that the Panel determined was owed to the City. MCI formally requests that the Award be modified . . . to reflect that, after taking into account MCI's Contract Balance, MCI must pay the City $5,271.647 plus interest."). In response, the arbitration panel explained that "[t]he Damages Award did not contain any errors and the arbiters have already decided all claims submitted to them. MCI's request to modify the Damage Award is [therefore] DENIED." J.A. 7416. In light of the arbitration panel's response, we find there is no ambiguity here that would require a remand.[9]

## 2.

MCI and National Union also insist that remand was necessary because the arbitration panel failed to issue a reasoned award as was required by the arbitration agreement. MCI and National Union maintain that the arbitration agreement is governed by the Judicial Arbitration Mediation Services ("JAMS") Rule 24(h), which requires arbitration awards to contain, "[u]nless all Parties agree otherwise, . . . a concise written statement of the reasons for the Award[s]." JAMS, Comprehensive Arbitration Rules & Procedures 23 (July 15, 2009),    http://www.jamsadr.com/files/Uploads/Documents/ JAMS-Rules/JAMS_comprehensive_arbitration_rules-2009.

---

[9]Further, the record reflects that MCI and the City submitted separate estimates detailing how much the City is entitled to recover, and their arguments as to these amounts are clearly set forth in the record of the arbitration proceedings. In fact, we note that the City requested an award of over $17 million, *after* subtracting the Contract Balance. Thus, as the district court found, the panel's award seems reasonable under the circumstances. *See Apex Plumbing*, 142 F.3d at 194 ("Where no mathematical error appears on the face of the award . . . an arbitration award will not be altered.") (internal quotations omitted) (alteration in original).

pdf. Thus, they argue, a reasoned award was mandated here. We disagree.

MCI and National Union misinterpret the nature of the arbitration agreement. As explained by the district court, the arbitration agreement provides that "[e]xcept as provided herein or otherwise agreed," the arbitration "would be [conducted pursuant to] standard AAA Complex Commercial *or* JAMS rules." J.A. 2634 (emphasis added). The only exception specified in the arbitration agreement is that "[i]f MCI prevail[ed] at the [Liability] Phase," the arbitration panel was required to apply the AAA Rules and Procedures for Large, Complex Construction Disputes. J.A. 2636. Because MCI did not prevail at the liability phase, the arbitration panel was free to apply either the AAA Complex Commercial Arbitration Rules or the JAMS Comprehensive Arbitration Rules and Procedures. The arbitration panel elected to proceed under the AAA Complex Commercial Arbitration Rules. Under Rule 42(b) of these rules, an arbitration panel "need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate." American Arbitration Association, Commercial Arbitration Rules and Mediation, http://www.adr.org/sp.asp?id= 22440#R42 (last visited June 7, 2010). In the instant case, none of the parties requested a reasoned damages award before the appointment of the arbitrators, and thus, the arbitration panel was not required to issue such an award.

Nevertheless, MCI and National Union argue that "[t]he District Court committed clear error in concluding that 'none of the parties requested a reasoned Damages Award before the Panel rendered its damages decision.'" Appellants' Br. at 46 (citing J.A. 7917). They note that MCI requested a reasoned damages award during the hearing, before the panel rendered its damages decision. *See, e.g.*, J.A. 7381 ("I agree with Mr. Meeker that the rules are contradictory. We think the proper resolution of that contradiction is for the requirement

of the more fulsome award should govern, and we would like a reasoned award."). Even so, we find the district court did not abuse its discretion in denying MCI's motion to remand. The AAA Complex Commercial Arbitration Rules require the party seeking a reasoned award to submit its request "prior to the appointment of the arbitrator[s]," not prior to the issuance of the arbitration award. American Arbitration Association, Commercial Arbitration Rules and Mediation, http://www.adr.org/sp.asp?id=22440#R42 (last visited June 7, 2010). Here, the request was not made prior to the appointment of the arbitrators, and thus, the panel was not required to provide a reasoned award. Therefore, the factual error made by the district court does not affect the resolution of this issue.

Accordingly, we find the district court did not abuse its discretion in denying MCI's motion to remand.

### III.

In conclusion, we hold that the district court did not abuse its discretion in certifying the judgment as final under Rule 54(b), primarily because the relationship between the adjudicated and unadjudicated claims was severed by virtue of the parties' own admissions. We also hold that the district court did not err in denying MCI and National Union's motion to vacate the arbitration awards. The record does not support MCI and National Union's contentions that the liability award was obtained through undue means, that the arbitration panel exceeded the scope of its powers to issue the damages award, or that the damages award does not draw its essence from the contract. Finally, we hold that the district court did not abuse its discretion in denying MCI's motion to remand. The damages award is not ambiguous, and the arbitration agreement did not require the arbitration panel to issue a reasoned award.

For the foregoing reasons, we affirm the judgment of the district court.[10]

*AFFIRMED*

---

[10]The City asks that we impose sanctions against MCI and National Union pursuant to *B.L. Harbert International, LLC v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. 2006), *overruled on other grounds*, *Hall Street*, 552 U.S. 576, *as recognized by*, *Frazier v. CitiFinancial Corp., LLC*, Nos. 08-15188, 08-15709, 2010 WL 1727446 (11th Cir. Apr. 30, 2010). In that case, the Eleventh Circuit explained that "it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions." *Id.* at 913. Because we find that MCI and National Union did have a real legal basis for pursuing this appeal, we decline to grant the City's request.