LYONS, Justice.
The dispute in the action in the Montgomery Circuit Court underlying this appeal and cross-appeal involves the construction of a residence. In appeal no. 1091077, Lighting Fair, Inc. (“Lighting Fair”), Cherry Marble Group, LLC (“Cherry Marble”), and Texture Crete, Inc. (“Texture Crete”), the plaintiffs below, *1258 appeal from the summary judgment against them and in favor of Michael L. Rosenberg, Heidi M. Christie, and Regions Bank d/b/a Regions Mortgage (“Regions”). In appeal no. 1091105, Rosenberg and Christie cross-appeal from the trial court’s order compelling arbitration of their cross-claims asserted against Terry H. Taylor and T.H. Taylor, Inc., d/b/a T.H. Taylor Homes (“Taylor Homes”). Rosenberg and Christie also appeal from the summary judgment against them and in favor of Regions on their cross-claims against Regions.

Factual Baclcground

In December 2007, Rosenberg and Christie, who are married (hereinafter referred to as “the Rosenbergs”), executed an agreement with Taylor Homes (“the construction contract”). The construction contract provided that Taylor Homes would construct a house for the Rosen-bergs for approximately $756,000. Under the construction contract, Taylor Homes was to be paid “based on the value of work in place as defined by the percentage of completion of each work item on the disbursement schedule.”[1] Specifically, Taylor Homes was to “present [the Rosen-bergs] with a pay request every Monday for payment on Thursday of the same week.” The construction contract also included an arbitration provision, which stated:
“[Taylor Homes] and [the Rosen-bergs] acknowledge and agree that this transaction substantially affects interstate commerce by virtue of the materials and components contained in the dwelling. Any controversy, claim, or dispute arising out of or relating to this agreement, or the breach thereof, or the transaction contemplated hereby, shall be settled by binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and shall be administered in accordance with the applicable rules of the Federal Arbitration Act. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.”
The Rosenbergs obtained a loan from Regions to finance the construction. On January 2, 2008, they executed an agreement with Regions (“the loan contract”) whereby they borrowed approximately $800,000 from Regions. Taylor Homes, by its president and sole shareholder, Terry H. Taylor, also executed the loan contract which, as discussed below, contained certain duties and guaranties with respect to Taylor Homes.
The loan contract provided that “construction advances” to Taylor Homes, which it also referred to as “disbursements,” would be “made in installments as the work on the construction progressed].” Rosenberg stated in an affidavit that Regions represented to him and Christie at the closing on the loan contract “that Regions would make all the construction advancements/disbursements pursuant to Regions’ standard disbursement schedule and procedures.” The loan contract in fact granted Regions authority to make advances: “(a) to [the Rosenbergs], (b) as authorized by [the Rosenbergs] in writing, or (c) as otherwise provided in the agreement.” The loan contract further stated that advancements would be made “in accordance with this agreement and [Regions’] standard disbursement schedule and procedures.”
Dottie Moore, the Regions employee who worked on the loan contract, stated in an affidavit that the Rosenbergs’ “entire transaction” with Regions “was handled on an arm’s-length basis.” Additionally, the *1259 loan contract stated that Regions was not acting as the Rosenbergs’ agent and that its relationship with the Rosenbergs was “solely that of borrower and lender.” In the loan contract, Regions also disclaimed responsibility for inspecting the Rosen-bergs’ property or informing the Rosen-bergs of the quality of Taylor Homes’ construction or of “the progress or course of construction and its conformance with the plans and specifications.”
At the time the loan contract was executed, Regions’ Consumer Loan Policy Manual stated: “Physical inspections are required to verify and document construction progress.” The loan contract provided:
“All inspection services, if any, rendered by [Regions] or [Regions’] officers, agents or employees, are or shall be rendered solely for the benefit of [Regions], and said inspections are not made for the benefit of, and shall not be construed to have been made for the benefit of, [the Rosenbergs], any subsequent purchasers, laborers, material-men, contracting parties, the general public, or any other person, firm or corporation, whether known or unknown. ...”
The loan contract also expressly limited Regions’ liability to materialmen and subcontractors and further stated that the loan contract “shall not be construed to be[ ] a third-party beneficiary contract in any respect or to any extent.” Finally, the loan contract contained the following guaranty by Taylor Homes: “[Taylor Homes] hereby guarantees completion of all improvements in full accordance with the plans and specifications ... and further agrees that all bills, invoices, and other charges incurred by [Taylor Homes] for labor and materials used in the construction of the improvements will be paid in full.”
Taylor Homes began work on the Rosenbergs’ house in January 2008 and promptly began requesting disbursements under the loan contract. Moore stated in her affidavit that Regions “received from [the Rosenbergs] requests for disbursement of loan proceeds which they had received from their contractor and which contained statements regarding the percentages of completion.” In response to discovery in this action, Regions stated that disbursements “were paid per the instructions of [the Rosenbergs]” and that “[e]ach request for advance on the construction loan was accompanied by a signed warranty that all subcontractors and other persons furnishing labor, material and equipment on the construction ... had been paid in full.”
In his affidavit, Rosenberg stated that Taylor periodically presented him with requests for disbursement that Taylor “was going to present to Regions” and that he “signed the request acknowledging [that he] had seen the request.” Rosenberg explained: “I was under the impression that Regions was following [its] standard disbursement schedule and procedures when advancing funds to [Taylor Homes;] otherwise, I would not have signed the document. It was my understanding that Regions controlled when and how the disbursement of funds would be made to [Taylor Homes].”
By October 15, 2008, approximately $728,000, or 90% of the principal of the loan, had been disbursed to Taylor Homes. However, according to Regions’ inspection reports, the Rosenbergs’ house was only 78.5% complete. No further disbursements were requested or made after October 15, 2008. Construction on the Rosen-bergs’ house, however, continued, and, in November and December 2008, Lighting Fair, Cherry Marble, and Texture Crete (hereinafter referred to collectively as “the *1260 materialmen”) provided materials used in the construction. Taylor Homes did not pay the materialmen for the materials they provided.
In January and February 2009, the ma-terialmen separately notified Taylor Homes, Regions, and the Rosenbergs of their intent to file liens on the Rosenbergs’ property. On January 20, 2009, Lighting Fair filed a lien with the Montgomery Probate Court against the Rosenbergs’ property in the amount of $8,565. On February 9, 2009, Texture Crete filed a lien against the Rosenbergs’ property in the amount of $19,850. And on March 6, 2009, Cherry Marble filed a lien against the Rosenbergs’ property in the amount of $3,113.

Procedural History

On March 13, 2009, Lighting Fair sued Taylor, Taylor Homes, the Rosenbergs, and Regions seeking a judgment on its lien and possession of the Rosenbergs’ property. Lighting Fair also asserted claims of breach of contract and account stated against Taylor and Taylor Homes; a civil-conspiracy claim against Taylor, Taylor Homes, and Regions; and, against all the defendants, claims alleging unjust enrichment and violations of § 8-29-1 et seq., Ala.Code 1975, (“the Prompt Pay Act”). Lighting Fair also stated claims seeking recovery of amounts it alleged it was owed for materials it had supplied to Taylor Homes on construction projects unrelated to the Rosenbergs’ residence. Lighting Fair named as defendants to those claims: Taylor; Taylor Homes; a homeowner, George Vogt; and two lenders, Compass Bank and Whitney National Bank.
The Rosenbergs answered Lighting Fair’s complaint and stated cross-claims against Taylor, Taylor Homes, and Regions. Specifically, the Rosenbergs stated claims of fraud and civil conspiracy against Taylor and Taylor Homes. They alleged that, in requesting disbursements, Taylor and Taylor Homes had misrepresented the amount of work done on the house and had conspired with Regions to obtain disbursements to which Taylor and Taylor Homes were not entitled. Against Regions, the Rosenbergs stated claims of suppression, civil conspiracy, and negligent, willful, or wanton failure to follow its procedures. The Rosenbergs alleged that Regions had suppressed information from them regarding its inspections, had conspired with Taylor and Taylor Homes to wrongfully disburse funds to Taylor Homes, and had wrongfully failed to follow internal procedures that would have protected the Rosenbergs.
Regions likewise answered Lighting Fair’s complaint and stated cross-claims against Taylor Homes and against the Rosenbergs. Regions stated a claim of breach of contract against Taylor Homes, alleging that Taylor Homes had breached that provision of the loan contract guaranteeing completion of the Rosenberg’s house in accordance with the plans and specifications and guaranteeing payment of materialmen and subcontractors. Regions stated a claim of breach of contract against the Rosenbergs, alleging that the Rosenbergs had breached several provisions of the loan contract. Regions also sought a judgment against the Rosenbergs based on a promissory note the Rosen-bergs executed simultaneously with the loan contract, alleging that the Rosenbergs had defaulted on the note.
Lighting Fair subsequently amended its complaint to add Cherry Marble as a plaintiff; Cherry Marble joined all of Lighting Fair’s claims against Taylor, Taylor Homes, Regions, and the Rosenbergs. Subsequently, Lighting Fair and Cherry Marble amended their complaint again to add negligence claims against Regions and the Rosenbergs based on alleged duty on *1261 the part of those defendants to ascertain whether Taylor Homes was paying its ma-terialmen.
Ultimately, the action was consolidated 1) with a separate action by Whitney National Bank against Taylor and Taylor Homes unrelated to the Rosenbergs’ property[2] and 2) with an action by Texture Crete against Taylor Homes and the Rosenbergs. In the Texture Crete action, Texture Crete sought enforcement of its lien related to the Rosenbergs’ property and stated claims against Taylor Homes seeking recovery on an open account and for “work and labor done” and against both Taylor Homes and the Rosenbergs, alleging breach of contract and account stated. After the actions were consolidated, Texture Crete amended its complaint to add Regions as a defendant and to state claims of negligence, unjust enrichment, and violations of the Prompt Pay Act against Regions.
Based on the arbitration provision in the construction contract, Taylor and Taylor Homes moved to compel arbitration of the fraud and civil-conspiracy cross-claims asserted against them by the Rosenbergs. The Rosenbergs opposed the motion, but on June 16, 2009, the trial court ordered the Rosenbergs’ cross-claims against Taylor and Taylor Homes to arbitration.
The parties thereafter engaged in extensive discovery. Ultimately, Regions moved for a summary judgment as to all the claims asserted against it by the mate-rialmen and as to the cross-claims asserted against it by the Rosenbergs. The Rosen-bergs moved for a summary judgment, arguing only that the materialmen were not entitled to enforce liens against them. Additionally, the materialmen filed an offensive motion for a summary judgment asking that the trial court enter a judgment in their favor against Regions and the Rosenbergs on the materialmen’s liens.[3]
On March 22, 2010, the trial court entered an order stating:
“Defendants Rosenberg[s] ... Motion[ ] for Summary Judgment against [the ma-terialmen] is GRANTED. Defendant ] Regions ... Motion for Summary Judgment is GRANTED. The jury trial on remaining issues is set for the week of May 3, 2010.”
The Rosenbergs’ claims against Taylor and Taylor Homes remained pending in arbitration, and the following claims remained pending before the trial court: all of the materialmen’s claims against Taylor and Taylor Homes; the materialmen’s claims against the Rosenbergs unrelated to their liens; and Regions’ cross-claims against Taylor Homes and the Rosenbergs. On the materialmen’s motion, the trial court, on April 9, 2010, certified its March 22, 2010, order as final under Rule 54(b), Ala. R. Civ. P.
On April 29, 2010, the materialmen filed a notice of appeal from the trial court’s March 22, 2010, order (appeal no. 1091077). On May 4, 2010, the Rosen-bergs filed a notice of appeal from the trial court’s June 16, 2009, order granting Taylor and Taylor Homes’ motion to compel arbitration and from the trial court’s March 22, 2010, summary judgment on *1262 their cross-claims against Regions (appeal no. 1091105).[4]

Analysis

I. Arbitration of the Rosenbergs’ Cross-Claims Against Taylor and Taylor Homes
We will first consider that portion of the Rosenbergs’ cross-appeal challenging the trial court’s June 16, 2009, order granting Taylor and Taylor Homes’ motion to compel arbitration (appeal no. 1091105). The Rosenbergs argue that the trial court erred in granting Taylor and Taylor Homes’ motion to compel arbitration of the Rosenbergs’ fraud and civil-conspiracy cross-claims. As to this issue, however, the appeal is untimely and must be dismissed.
Rule 4(d), Ala. R.App. P., provides:
“An order granting or denying a motion to compel arbitration is appealable as a matter of right, and any appeal from such an order must be taken within 4% days (6 weeks) of the date of the entry of the order, or within the time allowed by an extension pursuant to Rule 77(d), Alabama Rules of Civil Procedure.”
(Emphasis added.) Additionally, Rule 2(a)(1), Ala. R.App. P., provides: “An appeal shall be dismissed if the notice of appeal was not timely filed to invoke the jurisdiction of the appellate court.” Cf. Jenks v. Harris, 990 So.2d 878, 883-84 (Ala.2008) (“ ‘A direct appeal is the proper procedure by which to seek review of a trial court’s order granting or denying a motion to compel arbitration.’ Conseco Fin. Corp.-Alabama v. Salter, 846 So.2d 1077, 1080 (Ala.2002).... ‘[Rule 4(d), Ala. R.App. P.,] now evenhandedly states that both an order granting and an order denying a motion to compel arbitration are “appealable as a matter of right” within 42 days from date of the entry of the order. The “finality” of the order is thus assured, because failure to take an appeal from it within the 4.2-day time period forecloses later appellate review.’ Bowater Inc. v. Zager, 901 So.2d 658, 664 (Ala.2004) (emphasis- added).... Harris’s failure to appeal the trial court’s decision within 42 days bars his attempt to challenge it once arbitration has been completed.”).
The trial court’s order granting Taylor and Taylor Homes’ motion to compel arbitration was entered on June 16, 2009. The Rosenbergs did not file a notice of appeal from the order until May 4, 2010, nearly 11 months after the order was entered and well outside the 42 days prescribed by Rule 4(d). Because the Rosenbergs’ appeal of the trial court’s order granting Taylor and Taylor Homes’ motion to compel arbitration is untimely, this Court is without jurisdiction to consider it. Accordingly, we must dismiss that portion of the Rosenbergs’ appeal. See Rule 2(a)(1); see also, e.g., Graves v. Golthy, 21 So.3d 720, 723 (Ala.2009) (“Graves’s appeal is untimely; therefore, this Court is without jurisdiction and must dismiss the appeal. See Buchanan v. Young, 534 So.2d 263, 264 (Ala.1988) (‘The failure to file a notice of appeal within the time provided in Rule 4, [Ala. R.App. P.], is a jurisdictional defect and will result in a dismissal of the appeal.’).”).
II. Certification Under Rule 54(b), Ala. R. Civ. P.
We must next consider whether the trial court’s certification of its March 22, 2010, order as final under Rule 54(b), Ala. R. *1263 Civ. P., was proper. Rule 54(b) provides, in part:
“When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.”
This Court recently explained the appropriate standard for reviewing Rule 54(b) certifications, stating:
“ ‘If a trial court certifies a judgment as final pursuant to Rule 54(b), an appeal will generally lie from that judgment.’ Baugus v. City of Florence, 968 So.2d 529, 531 (Ala.2007).
“Although the order made the basis of the Rule 54(b) certification disposes of the entire claim against [the defendant in this case], thus satisfying the requirements of Rule 54(b) dealing with eligibility for consideration as a final judgment, there remains the additional requirement that there be no just reason for delay. A trial court’s conclusion to that effect is subject to review by this Court to determine whether the trial court exceeded its discretion in so concluding.”
Centennial Assocs. v. Guthrie, 20 So.3d 1277, 1279 (Ala.2009). Reviewing the trial court’s finding in Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala.2006), that there was no just reason for delay, this Court explained that certifications under Rule 54(b) are disfavored:
“This Court looks with some disfavor upon certifications under Rule 54(b).
“ ‘It bears repeating, here, that “ ‘[certifications under Rule 54(b) should be entered only in exceptional cases and should not be entered routinely.’ ” State v. Lawhorn, 830 So.2d 720, 725 (Ala.2002) (quoting Baker v. Bennett, 644 So.2d 901, 903 (Ala.1994), citing in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373 (Ala.1987)). “ ‘ “Appellate review in a piecemeal fashion is not favored.” ’ ” Goldome Credit Corp. [v. Player, 869 So.2d 1146, 1148 (Ala.Civ.App.2003)] (quoting Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So.2d 190,192 (Ala.Civ.App.1999), quoting in turn Brown v. Whitaker Contracting Corp., 681 So.2d 226, 229 (Ala.Civ.App.1996)) (emphasis added).’
“Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala.2004).”
In considering whether a trial court has exceeded its discretion in determining that there is no just reason for delay in entering a judgment, this Court has considered whether “the issues in the claim being certified and a claim that will remain pending in the trial court ‘ “are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.’”” Schlarb, 955 So.2d at 419-20 (quoting Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88, 95 (Ala.2002), quoting in turn Branch v. SouthTrust Bank of Dothan, N.A, 514 So.2d 1373, 1374 (Ala.1987), and concluding that conversion and fraud claims were too intertwined with a pending breach-of-contract claim for Rule 54(b) certification when the propositions on which the appellant relied to support the claims were identical). See also Centennial Assocs., 20 So.3d at 1281 (concluding that claims against an attorney certified as final under Rule 54(b) were too closely intertwined with pending claims against other defendants when the pending claims required “resolution of the same issue” as issue pending on appeal); and Howard v. Allstate Ins. Co., 9 So.3d 1213, 1215 (Ala.2008) *1264 (concluding that the judgments on the claims against certain of the defendants had been improperly certified as final under Rule 54(b) because the pending claims against the remaining defendants depended upon the resolution of common issues).
Additionally, in considering whether a trial court has exceeded its discretion in determining that there is no just reason for delay, several United States Courts of Appeals have expressly considered whether the resolution of claims that remain pending in the trial court may moot claims presented on appeal.[5] In MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849 (4th Cir.2010), the United States Court of Appeals for the Fourth Circuit explained:
“In determining whether there is no just reason for delay in the entry of judgment, factors the district court should consider, if applicable, include:
“ ‘(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district couH; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final;[3] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.’
“Braswell [Shipyards, Inc. v. Beazer E., Inc.], 2 F.3d [1331,] 1335-36 [ (4th Cir.1993) ] (footnote call number added) (quoting Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360, 364 (3d Cir.1975) [overruled on other grounds by Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1 (1980) ]).
610 F.3d at 855 (emphasis added). The United States Courts of Appeals for the Third and Sixth Circuits have also used the factors identified in MCI Constructors. See, e.g., Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 203 (3d Cir.2006); and Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc., 807 F.2d 1279, 1283 (6th Cir.1986).
Additionally, the United States Courts of Appeals for the Seventh and First Circuits have specifically considered mootness in determining whether there is no just reason for delay in the entry of a judgment under Rule 54(b), Fed.R.Civ.P. See, e.g., Lottie v. West American Ins. Co., 408 F.3d 935, 940 (7th Cir.2005) (“[W]e might never have to consider at all the bad faith and race discrimination claims if the contract claim is resolved in favor of West American. There would be no reason to consider whether the insurer’s breach was so egregious that it amounted to bad faith if there was no breach. Likewise, there would be no reason to consider whether *1265 West American breached the contract on account of race if West American did not in fact breach the contract.”); Horn v. Transcon Lines, Inc., 898 F.2d 589, 592 (7th Cir.1990) (“The possibility that developments in the litigation may moot a claim suggests that appellate resolution be deferred.”); Spiegel v. Trustees of Tufts College, 843 F.2d 38, 44-45 (1st Cir.1988) (“Should Spiegel prevail on Count IV — and we intimate no view of the matter — she might well have her tenure, her monetary balm, and payment for her litigation expenses. The first three statements of claim would be largely (if not entirely) mooted and the need for appellate review would vanish. Appellate courts, understandably, have treated such a possibility as a major negative in the Rule 54(b) equation.”).
In this case, the trial court’s March 22, 2010, order disposed of all the claims asserted by the materialmen against Regions and the Rosenbergs and all the Rosenbergs’ cross-claims against Regions, thus satisfying the requirements of Rule 54(b) dealing with eligibility for consideration as a final judgment. We must, however, determine whether the trial court exceeded its discretion in determining that there was no just reason for delay in the entry of the judgment. Specifically, we must determine whether the claims certified as final pursuant to Rule 54(b) and the claims that remain pending in the trial court “are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.” Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala.1987). We must also consider whether “the need for review might or might not be mooted by future developments in the [trial] court.” Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 364 (3d Cir.1975), overruled on other grounds by Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).
A. Appeal No. 1091077
In appeal no. 1091077, the materialmen argue that the trial court erred in entering a summary judgment against them and in favor of Regions and the Rosenbergs on their lien claims and that the trial court erred in not granting their motion for a summary judgment. First, the material-men argue that they presented sufficient evidence showing that they are entitled to recover on alleged liens on the unpaid balance of funds held by Regions that the Rosenbergs owe Taylor and Taylor Homes; the materialmen contend that this evidence precludes a summary judgment against them and warrants a summary judgment in their favor. The materialmen base their lien claims on the premise that the Rosenbergs owe Taylor and Taylor Homes additional funds. The Rosenbergs, however, have ceased making payments to Taylor Homes and have filed cross-claims against Taylor and Taylor Homes, asserting claims of fraud and civil conspiracy, alleging that Taylor and Taylor Homes wrongfully obtained more of the proceeds of the loan contract than they were entitled to receive. The Rosenbergs have been ordered to arbitrate their cross-claims against Taylor and Taylor Homes. For all that appears, the arbitrator could determine that Taylor and Taylor Homes in fact engaged in wrongful conduct and that the Rosenbergs owe them nothing. The materialmen’s lien claim could, therefore, be rendered moot becausé it is dependent on the liability of the Rosenbergs to Taylor and Taylor Homes. As a result, the trial court exceeded its discretion in determining that there was no just reason for delay and in certifying its judgment on the materialmen’s lien claims as final under Rule 54(b). See, e.g., MCI Construe- *1266 tors, 610 F.3d at 855; Horn, 898 F.2d at 592; and Allis-Chalmers Corp., 521 F.2d at 364.
Second, the materialmen argue that they presented sufficient evidence showing that they are entitled to an equitable lien against the undisbursed loan proceeds held by Regions; they contend that this evidence precludes a summary judgment against them and indeed warrants a summary judgment in their favor. The mate-rialmen base their argument that they are entitled to an equitable lien against the undisbursed proceeds on the premise that Regions has unclean hands in that it wrongfully disbursed funds to Taylor and Taylor Homes for work not yet done. However, the question of Taylor and Taylor Homes’ wrongdoing — and consequently the question whether the loan proceeds were wrongfully disbursed — is squarely at issue in the Rosenbergs’ pending cross-claims against those defendants. As with the materialmen’s lien claims, should the arbitrator determine that Taylor and Taylor Homes did not receive any funds to which they were not entitled, the material-men’s equitable-lien claims against Regions on the undisbursed loan proceeds would be moot. Because the material-men’s claims of an equitable lien involves the Court in the adjudication of potentially moot claims, the trial court exceeded its discretion in concluding that there was no just reason for delay in entering the judgment and, therefore, in certifying its judgment on that claim as final under Rule 54(b). See, e.g., MCI Constructors, 610 F.3d at 855; Horn, 898 F.2d at 592; and Allis-Chalmers Corp., 521 F.2d at 364.
Next, the materialmen argue that the trial court erred in entering a summary judgment against them on their claim of unjust enrichment against Regions. Regarding that claim, the material-men state the following argument in their principal brief on appeal:
“In order to make the ruling it made, the only conclusion the trial court could have made was that there is no unpaid balance owed by [the Rosenbergs] to [Taylor Homes]. Such a conclusion, however, is not supported by the record .... Additionally, none of the claims brought by [the Rosenbergs] against [Taylor Homes] have even been adjudicated as the trial court ordered arbitration of such.... As such, the trial court could not have and should not have made the conclusion that there was no unpaid balance.”
(Materialmen’s brief, at 30-31 (citations to the record omitted).) The materialmen, therefore, admit that the trial court’s determination on their unjust-enrichment claim is intertwined with the Rosenbergs’ claims against Taylor and Taylor Homes. Indeed, resolution of the claim requires consideration of the same issue: whether the Rosenbergs owe additional funds to Taylor and Taylor Homes. The material-men argue that “the trial court could not have and should not have” reached a decision regarding that question. Likewise, this Court should not consider the question because, as the materialmen effectively concede, their unjust-enrichment claim and the Rosenbergs’ claims against Taylor and Taylor Homes “are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.” Branch, 514 So.2d at 1374; see also Centennial Assocs., 20 So.3d at 1281.
Finally, the materialmen argue that the trial court erred in entering a summary judgment for Regions on them negligence claim. Like the materialmen’s claim under an alleged equitable lien, their negligence claim is based on the premise that Regions wrongfully disbursed funds to Taylor and Taylor Homes for work not yet done. As *1267 discussed above, the arbitrator’s decision on the Rosenbergs’ claims against Taylor and Taylor Homes could render that question moot. Accordingly, the trial court exceeded its discretion in concluding that there was no just reason for delay in entering the judgment and in certifying its judgment on the materialmen’s negligence claim as final under Rule 54(b). See, e.g., MCI Constructors, 610 F.3d at 855; Horn, 898 F.2d at 592; and Allis-Chalmers Corp., 521 F.2d at 364.
We, therefore, conclude that, as to each of the materialmen’s claims against Regions and as to their lien claims against the Rosenbergs, the trial court exceeded its discretion in finding that there was no just reason for delay in the entry of the judgment and in certifying its March 22, 2010, order as final under Rule 54(b). Appeal no. 1091077, therefore, must be dismissed as being from a nonfinal judgment.
B. Appeal No. 1091105
We held in Part I of the Analysis section of this opinion that that portion of the Rosenbergs’ appeal challenging the trial court’s order compelling arbitration is due to be dismissed as untimely filed. In appeal no. 1091105, the Rosenbergs also argue that the trial court erred in entering a summary judgment against them on their cross-claims against Regions alleging suppression, civil conspiracy, and negligence. On close inspection, these claims are closely intertwined with the Rosen-bergs’ claims against Taylor and Taylor Homes and may be rendered moot by the arbitrator’s resolution of those claims.
As discussed above, the Rosenbergs have stated claims of fraud and civil conspiracy against Taylor and Taylor Homes, and these claims have not yet been resolved in arbitration. The Rosenbergs expressly allege in their civil-conspiracy claim against Regions, Taylor, and Taylor Homes that
“Taylor, [Taylor Homes], and Regions conspired together, each with the other, to unlawfully scheme, plan, design and intentionally commit all acts all acts alleged, specifically, Regions disbursing funds to [Taylor] and/or [Taylor Homes], with [the Rosenbergs] receiving no value therefor[], in order to wrongfully deprive [the Rosenbergs] of property in order for [Taylor,] [Taylor Homes], and Regions [to] financially gain from the same.”
This claim, asserted against Regions in the appeal before us and against Taylor and Taylor Homes in arbitration, rests on a single issue: whether those defendants conspired together to wrongfully deprive the Rosenbergs of their property. The arbitrator and this Court could certainly reach different conclusions regarding the sufficiency of the evidence as to this question. Accordingly, the Rosenbergs’ civil-conspiracy claim against Regions and their civil-conspiracy claim against Taylor and Taylor Homes “are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.” Branch, 514 So.2d at 1374; see also Centennial Assocs., 20 So.3d at 1281.
Finally, the Rosenbergs’ claims alleging that Regions suppressed evidence from them and otherwise acted negligently toward them are premised on the proposition that Regions knew of or should have known of the allegedly wrongful conduct of Taylor and Taylor Homes. As stated above, however, the question of Taylor and Taylor Homes’ wrongdoing is squarely at issue in the Rosenbergs’ claims pending against those defendants and, therefore, any issue related to their alleged wrongdoing may be rendered moot by a resolution of those claims in arbitration. See, e.g., MCI Constructors, 610 F.3d at 855; Horn, *1268 898 F.2d at 592; and Allis-Chalmers Corp., 521 F.2d at 364.
As a result, as to each of the Rosen-bergs’ cross-claims against Regions, the trial court exceeded its discretion in concluding that there was no just reason for delay in the entry of its judgment and in certifying its March 22, 2010, order as final under Rule 54(b). We must, therefore, dismiss appeal no. 1091105.

Conclusion

Based on the foregoing, we dismiss appeal no. 1091077 and appeal no. 1091105 in their entireties.
1091077 — APPEAL DISMISSED.
1091105 — APPEAL DISMISSED.
COBB, C.J., and STUART, BOLIN, and SHAW, JJ., concur.

. The disbursement schedule was not made a part of the record on appeal.

. The record on appeal does not include a copy of Whitney Bank’s complaint against Taylor and Taylor Homes. Accordingly, we cannot determine precisely what claims were asserted in that action.

. Vogt and Whitney National Bank also moved for a summary judgment on the claims asserted against them by the materialmen in the action unrelated to the construction of the residence in this proceeding. The trial court granted their summary-judgment motions.

. The supplemental record on appeal shows that, after the notices of appeal were filed, the materialmen settled their claims against Taylor and Taylor Homes. The trial court entered consent judgments against Taylor and Taylor Homes and in favor of the material-men in the total amount of $53,000 in May 2010.

. "Federal cases are authoritative in construing the Alabama Rules of Civil Procedure because the Alabama rules were patterned after the Federal Rules of Civil Procedure. Cutler v. Orkin Exterminating Co., 770 So.2d 67, 70 n. 2 (Ala.2000).” Borders v. City of Huntsville, 875 So.2d 1168, 1176 n. 2 (Ala.2003). Rule 54(b), Ala. R. Civ. P., is nearly identical to its federal counterpart, Rule 54(b), Fed.R.Civ.P.

" 3 On this factor, the [United States] Supreme Court has explained 'that counterclaims, whether compulsory or permissive, present no special problems for Rule 54(b) determinations; counterclaims are not to be evaluated differently from other claims.’ Curtiss-Wright Corp., 446 U.S. at 9, 100 S.Ct. 1460. Like other claims, the Court has explained, 'their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought.' Id."