SHAW, Justice.
Charles H. Stephens and Stephens Properties, Inc., the defendants/counterclaim plaintiffs below, appeal from a judgment entered on a jury verdict in favor of Fines Recycling, Inc. (“Fines”); Harry Donaldson, Jr.; Gerry Hamby; Hal Isbell; and Donald G. Wilson (collectively “the Fines shareholders”), the plaintiffs/counterclaim defendants below, on claims stemming from a dispute over a commercial lease. We dismiss the appeal as being from a nonfinal judgment.

Facts and Procedural History

Stephens Properties, Inc., is an Alabama corporation that leased commercial rental property in Talladega; Charles H. Stephens is the president of Stephens Properties. At all times pertinent to this dispute, Fines, also an Alabama corporation, was involved in the business of salvaging scrap metal from the automobile-shredding process. In May 1996, Stephens Properties and Fines, Inc., Fines’s predecessor in interest, entered into a lease agreement pursuant to which Fines, Inc., leased approximately six acres of real property in Talladega for use in its metal-reclamation business.
With regard to that lease agreement and the resulting business relations of the parties, and as reflected in the record, “the following facts [were] established by ad *869 mission in the pleadings or by stipulation of counsel”:
“e. On or about the 10th day of May, 1996, Finest, Inc.,] and Stephens Properties executed a lease of certain lands located in Talladega Gounty, Alabama. ...
“f. Finest, Inc.,] operated a recycling business on property belonging to Stephens Propertiest;] Finest, Inc.,] ordered truckloads of auto dirt and auto fluff (material from auto shredders) sent to it for a screening process to screen out metals which could be sold to foundries and other businesses. The material remaining after reclamation was a byproduct of this business. Finest, Inc.,] developed this soil-product for use as landfill cover.
“g. Finest, Inc.,] attempted to have this byproduct classified by the Alabama Department of Environmental Management, hereinafter referred to as ‘ADEM,’ as ‘fill’ or ‘cover’ rather than waste. ADEM originally accepted the classification with certain conditions, but in 1998 changed [its] position and stated that the auto dirt and byproduct was waste which must be removed and disposed of in a landfill.
“h. Finest, Inc.,] applied for and received a landfill permit from ADEM to construct a landfill nearby on other property owned by Stephens Properties. The initial permit was to allow Finest, Inc.,] to construct a landfill to dump the waste from its metal reclaiming business .... Finest, Inc.,] did not construct the landfill.
“i. In 1999, Finest, Inc.,] entered into a transaction with a company named WCA of Alabama, LLC, hereinafter referred to as ‘WCA of Alabama,’ whereby Finest, Inc.,] would sell it’s [sic] landfill permit to WCA of Alabama so that WCA of Alabama could construct and operate a landfill. This transaction was effectuated by selling the stock of Finest, Inc.,] to WCA of Alabama, then transferring all assets, rights and obligations of Fines, [Inc.,] except for the permit, to another company named Fines Recycling, Inc, hereinafter referred to as ‘Fines Recycling.’ ...
“j. On or about the 80th day of June, 1999 the assets of Finest, Inc.,] were transferred to Fines Recycling, including the lease agreement between Finest, Inc.,] and Stephens Properties. Fines Recycling continued to operate its recycling operation on, and otherwise used and occupied, property belonging to Stephens Properties.
“k. As part of the sale to WCA of Alabama, the [Fines shareholders], Donaldson, Hamby, Isbell and Wilson, each received shares of stock in Waste Corporation of America, Inc., hereinafter referred to as ‘WCA of America.’ WCA of America went public in June, 2004 and new stock certificates were issued by WCA of America.
“1. In March of 1999 ADEM sent a notice of violation alleging that Fines Recycling had an unauthorized solid waste dump on the property and demanded that it cease the unauthorized disposal and move the waste to a permitted solid waste disposal facility.[1]
“p. Isbell pledged his individually owned WCA of America stock to Stephens Properties as security for the obligation of Fines Recycling to clean up the property and for rent until current.
*870 “q. Hamby, Donaldson[,] and Wilson pledged their individually owned WCA of America stock to Stephens Properties as security for the clean up of the property but deny that they pledged their stock for rent owed by Fines Recycling to Stephens Properties.
“r. Hamby, Wilson[,] and Donaldson delivered possession of their WCA of America stock certificates to [Charles] Stephens and Stephens Properties.
“s. Because Isbell had lost his WCA of America stock certificate, Isbell executed a written agreement with Stephens Properties pledging 12,823 shares of stock as security for clean up and rent until current.
“t. In September or October, 2001, Fines Recycling moved its operations to Birmingham. At that time, auto fluff and material resulting from the operations of Fines Recycling was left on the property owned by Stephens Properties.
“u. In 2002 Fines Recycling permanently went out of business.
“v. The property owned by Stephens Properties was ultimately cleaned up and the fluff and material resulting from the operations of Fines Recycling was removed from the property.”
Following completion of the environmental cleanup, however, Stephens Properties and/or Stephens allegedly failed to return the stock certificates pledged as security by the Fines shareholders.
Fines and the Fines shareholders subsequently filed the underlying action against Stephens Properties and Stephens, which, following several amendments, ultimately sought compensatory and punitive damages related to claims of breach of contract, fraudulent misrepresentation, conversion of the pledged stock certificates, and conversion of a 1990 Case brand loading tractor (“the Case loader”). Stephens Properties and Stephens answered, and Stephens Properties filed several counterclaims. Following several amendments, Stephens Properties’ counterclaims ultimately sought the following relief: a declaratory judgment as to the rights, liabilities, and obligations of the parties with respect to the lease of the property, the cleanup process necessitated by environmental violations on the property as identified by the Alabama Department of Environmental Management (“ADEM”), and the pledged stock certificates; judicial foreclosure of the pledged stock certificates; and money damages associated with Fines’s purported breach of the lease agreement by allegedly failing to pay rent after February 2000 and for damage to the rental premises. Stephens Properties also alleged misrepresentation and sought to pierce the corporate veil and to impose personal liability on the Fines shareholders for any judgment entered against Fines.
The case proceeded to a jury trial on the following six claims: Fines and the Fines shareholders’ claim that Stephens Properties and/or Stephens converted the Case loader; the Fines shareholders’ claim that Stephens Properties and/or Stephens converted the stock certificates of Donaldson, Hamby, and Wilson; the Fines shareholders’ breach-of-contract action based on Stephens Properties’ and/or Stephens’s alleged failure to return the pledged stock certificates as agreed by the parties; Stephens Properties’ counterclaim seeking past-due rent; Stephens Properties’ counterclaim seeking damages for the cost of repairs for damage under the lease; and Stephens Properties’ counterclaim seeking damages for additional costs and damage to the leased premises.[2]
The jury found as follows:
*871 • That Stephens Properties and Stephens converted the Case loader and awarded $17,000 in compensatory damages and $40,000 in punitive damages to Fines as to that claim;
• That Hamby, Wilson, and Donaldson did not pledge their stock certificates to Stephens Properties to secure payment of past-due rent (but only as security for the promise of environmental cleanup);
• That Stephens, individually, converted Donaldson’s pledged stock certificate and awarded $29,000 in compensatory damages and $50,000 in punitive damages;
• That Stephens, individually, converted Wilson’s pledged stock certificate and awarded $29,000 in compensatory damages and $50,000 in punitive damages;
• That Stephens, individually, converted Hamby’s pledged stock certificate and awarded $100,855 in compensatory damages and $180,000 in punitive damages;
• That Fines breached the lease agreement and awarded Stephens Properties $439,410 in past-due rent; and
• That $89,760 of the past-due rent figure is subject to the stock certificate that Isbell pledged as security to Stephens Properties for past-due rent.
Thus, the jury awarded Fines $57,000 in damages against Stephens Properties and Stephens and awarded Stephens Properties $439,410 in damages against Fines. Stephens was found liable for a total of $438,855 to be paid to Hamby, Wilson, and Donaldson.
On November 30, 2009, the trial court entered a judgment on the foregoing verdict. In its judgment, the trial court noted:
“Prior to commencement of the jury trial, the Court and the attorneys of record agreed that the equitable issues of piercing the corporate veil and foreclosure of stock would be severed and tried non-jury. The Court will be required to schedule a hearing on the equitable issue of piercing the corporate veil and the equitable issue of foreclosing [the] stock owned by ... Isbell that was pledged for rent due by Fines ... to Stephens Properties ... as determined by one of the verdicts.
“This case involves multiple claims by the parties. The Court allowed the parties to litigate the jury issues and there remains equitable and/or non-jury issues pending before the Court. It would be inequitable to decide the issue of piercing the corporate veil and the disposition of collateral pledged by ... Isbell to Stephens Properties ... until such time as this order is made final and any potential appeal or appeals have been fully adjudicated. It is the intent of the Court to enter an order directing the entry of a final judgment as to all verdicts rendered by the jury in this cause and make an express determination that there is no just reason for delay and direct the entry of judgments hereinbe-low in accordance with Rule 54 of the Alabama Rules of Civil Procedure.”
In accordance with its expressed intention, the trial court purported to certify its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., on grounds that there was no just reason for delay.[3] Stephens Prop *872 erties and Stephens subsequently filed a motion seeking a judgment as a matter of law or, in the alternative, relief from the judgment and/or a new trial, which the trial court denied. They also filed a separate motion seeking to vacate the trial court’s certification of the judgment as final pursuant to Rule 54(b). The trial court likewise denied that motion, as well as a Rule 60(b), Ala. R. Civ. P., motion filed by Fines and the Fines shareholders seeking to vacate the portion of the trial court’s judgment awarding a judicial lien on Is-bell’s stock certificate.
Subsequently, the trial court amended its judgment and purported “to further provide for additional Rule 54(b) language as set out herein for the purpose of supplementing prior grounds for the entry of a final judgment.” Specifically, it noted:
“The need for the [Rule] 54(b) certification is more evident now due to the necessity of allowing counsel for [Fines and the Fines shareholders] to pursue, if they choose to do so, an appeal of this Court’s denial of the Rule 60(b) motion. In the event of an appeal, the trial court needs the appellate courts to resolve all of the claims previously adjudicated and rulings by this Court prior to the trial court proceeding with the equitable issues of piercing the corporate veil and foreclosure of stock to satisfy a portion of a monetary judgment rendered in favor of Stephens ... and against Fines....”
Stephens Properties and Stephens (collectively “the appellants”) timely appealed; Fines and the Fines shareholders, however, did not appeal the breach-of-contract judgment or the denial of their Rule 60(b) motion.

Discussion

In addition to challenging the trial court’s denial of their motions seeking a judgment as a matter of law as to the conversion of the Case loader and the pledged stock certificates and its decision to submit the issue of punitive damages to the jury, the appellants argue that the trial court’s Rule 54(b) certification was erroneous in light of the relationship between the adjudicated claims and the still pending claims. Specifically, they contend that this Court lacks jurisdiction to entertain the present appeal because, they say, the equitable counterclaims asserted by Stephens Properties, which remain pending in the trial court, are “intertwined” with the legal claims decided by the jury. See Allen v. Briggs, 60 So.3d 899, 904 (Ala.Civ.App.2010) (“[I]f a Rule 54(b) certification is determined to have been improperly entered, the judgment so certified is considered to be nonfinal and therefore unable to support an appeal.” (citing Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 361 (Ala.2004))). In a related argument, the appellants assert that, in purporting to “sever” the equitable claims from the legal claims, the trial court also exceeded its discretion. As to both arguments, we agree.

I. Severance Versus Separate Trials

Initially, the appellants maintain that, although the trial court’s order refers to the equitable issues presented by Stephens Properties’ counterclaim as having been “severed” from the legal claims of the parties (terminology that Fines and the Fines shareholders repeat in their brief to this Court), in actuality, there was no formal severance of those claims pursuant to Rule 21, Ala. R. Civ. P. Instead, they argue, the equitable claims were merely separated from the legal, jury claims, as *873 permitted by Rule 42, Ala. R. Civ. P., for purposes of trial. Contrary to that position, Fines and the Fines shareholders contend that the remaining claims “were severed under Rule 21 [, Ala. R. Civ. P.,]” and “are to be tried in a separate action.” The record does not support Fines and the Fines shareholders’ contention.
As has been frequently observed, the distinction between the terms “severed” and “separated for trial” is an important one and one that often gives rise to confusion for both courts and litigants. Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So.2d 190 (Ala.Civ.App.1999). See also New Acton Coal Mining Co. v. Woods, 49 So.3d 181, 185 (Ala.2010) (“ ‘Confusion has sometimes arisen between a true severance and an order providing for separate trials pursuant to Rule 42(b).’ ” (quoting Committee Comments Adopted February 13, 2004, to Rule 21, Ala. R. Civ. P.)), and Opinion of the Clerk No. 54, 982 So.2d 1059, 1061 (Ala.2007) (observing that “‘[l]awyers and judges tend to use the terms [“severance” and “separate” trials] interchangeably, speaking of “severance” when all that is intended is a separate trial.’ ” (quoting Opinion of the Clerk No. 45, 526 So.2d 584, 586 (Ala.1988))).
“Although the trial court used the word ‘sever’ in ordering the separate trials of the claims, there is a clear distinction between severing claims and ordering separate trials on claims.
“ ‘ “ ‘Rule 42(b)[, Ala. R. Civ. P.,] allows the court to order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims or issues. The court may do so in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. The procedure authorized by Rule 42(b) should be distinguished from severance under Rule 21 [, Ala. R. Civ. P.]. Separate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently. Unfortunately this distinction, clear enough in theory, is often obscured in practice since at times the courts talk of “separate trial” and “severance” interchangeably.’ (Footnotes omitted.)
“ ‘ “Federal Practice and Procedure: Civil § 2387 (1971).” ’
“Ex parte Palughi, 494 So.2d 404, 406 (Ala.1986) (quoting Key v. Robert M. Duke Ins. Agency, 340 So.2d 781, 783 (Ala.1976)); Opinion of the Clerk No. 45, 526 So.2d 584 (Ala.1988) (concluding that when a claim is severed pursuant to Rule 21, Ala. R. Civ. P., a separate filing fee should be paid on that separate action). Further, the label assigned by the parties or by the trial court is not determinative; ‘“[t]he substance of the court’s action, not its form, controls.” ’ Ex parte Palughi, 494 So.2d at 406 (quoting Key v. Robert M. Duke Ins. Agency, 340 So.2d at 783).”
Morgungenko v. Dwayne's Body Shop, 23 So.3d 671, 673-74 (Ala.Civ.App.2009). See also Woods, 49 So.3d at 184-85 (“A significant distinction exists between an order separating trials under Rule 42(b) and one severing claims under Rule 21 because ‘severed claims become independent actions with judgments entered independently, while separate trials lead to one judgment.’ ” (quoting Universal Underwriters Ins. Co. v. East Cent. Alabama Ford-Mercury, Inc., 574 So.2d 716, 725 (Ala.1990))).
Here, the trial court’s pretrial order indicated that the equitable, nonjury *874 counterclaims would be “addressed by the court in a post jury trial setting.” See supra note 2. Its judgment incorporating the jury verdict, however, stated that those claims “would be severed and tried non-jury.” Although the trial court used the word “sever,” we note the absence in the record on appeal of any motion seeking to sever the equitable counterclaims pursuant to Rule 21 and the absence of any reference by the trial court to that rule. Finally, had a true severance actually occurred, the entry of a Rule 54(b) certification would have been unnecessary. See Key v. Robert M. Duke Ins. Agency, 340 So.2d 781, 783 (Ala.1976) (noting that Rule 54(b) “applies to actions in which ‘separate trials’ are ordered pursuant to Rule 42(b)” but “does not apply ... to claims ‘severed’ from the original action”), and Tucker Motor Co. v. Davenport, 396 So.2d 101, 103 (Ala.Civ.App.1980) (finding that conclusion that trial court ordered separate trials but not a severance under Rule 21 was “buttressed by the action of the circuit court in clearly making the judgment final as is authorized by Rule 54(b).... ”).[4]
Based on the actions of the trial court as reflected in the record, we conclude, as the appellants urge, that the trial court merely meant to order separate trials of the legal issues and the equitable issues. Thus, notwithstanding the trial court’s conclusion in the November 30, 2009, judgment that it had “severed” the equitable counterclaims, the substance of the trial court’s action was to order separate trials pursuant to Rule 42 in order to accommodate the presence of both jury and nonjury issues. Accordingly, we conclude that the trial court did not order a severance of the equitable counterclaims pursuant to Rule 21 but, rather, simply ordered separate trials of those claims pursuant to Rule 42(b). See Certain Underwriters at Lloyd’s, London v. Southern Natural Gas Co., 939 So.2d 21, 27 (Ala.2006).

II. Rule 51(b) Certification

Because, as determined above, the trial court directed separate trials of the legal and equitable claims, the trial court’s judgment, entered in response to the jury verdict determining the legal claims, was not a final judgment unless the trial court’s Rule 54(b) certification is valid. See, e.g., Woods, 49 So.3d at 185; Harper Sales, 742 So.2d at 192; and Bryant v. Flagstar Enters,, Inc., 717 So.2d 400, 402 (Ala.Civ.App.1998). “The purpose of Rule 54(b) ... is to make final ‘an order which does not adjudicate the entire case but as to which there is no just reason for delay in the attachment of finality.’ ” Ex parte James, 836 So.2d 813, 852 (Ala.2002) (Moore, C.J., concurring in the result in part and dissenting in part) (quoting Foster v. Greer & Sons, Inc., 446 So.2d 605, 609 (Ala.1984), overruled on other grounds, Ex parte Andrews, 520 So.2d 507 (Ala.1987)). However, “ ‘[n]ot every order has the requisite element of finality that can trigger the operation of Rule 54(b).’ ” Dzwonkowski, 892 So.2d at 361 (quoting Goldome Credit Corp. v. Player, 869 So.2d 1146, 1147 (Ala.Civ.App.2003) (emphasis omitted)).
*875 “‘Rule 54(b) certifications “should be made only in exceptional cases.” ’ ” Posey v. Mollohan, 991 So.2d 253, 258-59 (Ala.Civ.App.2008) (quoting Wallace v. Tee Jays Mfg. Co., 689 So.2d 210, 212 (Ala.Civ.App.1997)).
“Rule 54(b) provides, in part:
“ ‘When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.’
“This Court recently explained the appropriate standard for reviewing Rule 54(b) certifications, stating:
“ ‘ “If a trial court certifies a judgment as final pursuant to Rule 54(b), an appeal will generally lie from that judgment.” Baugus v. City of Florence, 968 So.2d 529, 531 (Ala.2007).
“ ‘Although the order made the basis of the Rule 54(b) certification disposes of the entire claim against [the defendant in this case], thus satisfying the requirements of Rule 54(b) dealing with eligibility for consideration as a final judgment, there remains the additional requirement that there be no just reason for delay. A trial court’s conclusion to that effect is subject to review by this Court to determine whether the trial court exceeded its discretion in so concluding.’
“Centennial Assocs. v. Guthrie, 20 So.3d 1277, 1279 (Ala.2009). Reviewing the trial court’s finding in Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala.2006), that there was no just reason for delay, this Court [has] explained that certifications under Rule 54(b) are disfavored[.]
“In considering whether a trial court has exceeded its discretion in determining that there is no just reason for delay in entering a judgment, this Court has considered whether ‘the issues in the claim being certified and a claim that will remain pending in the trial court “ ‘are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.”” Schlarb, 955 So.2d at 419-20 (quoting Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88, 95 (Ala.2002), quoting in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala.1987), and concluding that conversion and fraud claims were too intertwined with a pending breach-of-contract claim for Rule 54(b) certification when the propositions on which the appellant relied to support the claims were identical). See also Centennial Assocs., 20 So.3d at 1281 (concluding that claims against an attorney certified as final under Rule 54(b) were too closely intertwined with pending claims against other defendants when the pending claims required ‘resolution of the same issue’ as issue pending on appeal); and Howard v. Allstate Ins. Co., 9 So.3d 1213, 1215 (Ala.2008) (concluding that the judgments on the claims against certain of the defendants had been improperly certified as final under Rule 54(b) because the pending claims against the remaining defendants depended upon the resolution of common issues).
“... In MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849[, 855] (4th Cir.2010), the United States Court of Appeals for the Fourth Circuit explained:
*876 “ ‘In determining whether there is no just reason for delay in the entry of judgment, factors the district court should consider, if applicable, include:
“ ‘ “(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.”
“ ‘Braswell [Shipyards, Inc. v. Beazer E, Inc.], 2 F.3d [1331,] 1335-36 [(4th Cir.1993) ] ... (quoting Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360, 364 (3d Cir.1975) [overruled on other grounds by Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1 (1980)]).’ ”
Lighting Fair, Inc. v. Rosenberg, 63 So.3d 1256, 1263-64 (Ala.2010) (footnotes and emphasis omitted). Of those five factors relevant to a Rule 54(b) inquiry, the appellants argue that three of the factors mandate a vacation of the certification in the present case: the relationship between the adjudicated and unadjudicated issues, the existence of a potential setoff, and the effect of an immediate appeal on the parties.

A. Whether Stephens Properties’ Breach-of-Contract Claim Has Been Completely Adjudicated

Initially, the appellants contend that Rule 54(b) certification was inappropriate because, they say, the remaining equitable “claims” are not, in fact, separate claims, but “are actually remedies for the adjudicated legal claims.” As support for this contention, the appellants rely on this Court’s decision in Ex parte Thorn, 788 So.2d 140 (Ala.2000), in which we held that “the piercing-the-corporate-veil doctrine is an equitable doctrine” but that “that doctrine is not a claim” and, instead, “ ‘merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation.’ ” 788 So.2d at 145 (quoting 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (perm. ed. rev.vol.1999)). Here, the appellants maintain, the count in the counterclaim seeking to pierce the corporate veil is “an integral part of the [already adjudicated] breach of contract claim,” and the trial court has thus not disposed of that claim in its entirety. Cf. Banyan Corp. v. Leithead, 41 So.3d 51, 54 (Ala.2009) (trial court’s resolution of alter ego claim did not also determine liability for related breach-of-contract claim; therefore, because breach-of-contract claim was not fully adjudicated, Rule 54(b) certification of partial summary judgment entered on that claim was error). The appellants also contend that the facts giving rise to the legal and equitable claims are so similar and intertwined that separate resolution of those claims creates a likelihood of “piecemeal” appeals, which this Court clearly disfavors. See, e.g., First Southern Bank v. O’Brien, 931 So.2d 50, 53 (Ala.Civ.App.2005) (noting that “ ‘ “[appellate review in a piecemeal fashion is not favored, and trial courts should certify a judgment as final, pursuant to Rule 54(b), only in a case where the failure to do so might have a harsh effect” ’ ” (quoting other cases) (emphasis omitted)), and Day v. Davis, 989 So.2d 1118, 1121 (Ala.Civ.App. *877 2008) (stating that “[w]hen claims ‘are so interrelated that they should be adjudicated simultaneously and not piecemeal,’ a Rule 54(b) certification is not appropriate”).
As to this argument, Fines and the Fines shareholders attempt to demonstrate that Thom stands only for the undisputed proposition that a count seeking to pierce the corporate veil is appropriately disposed of in a nonjury setting after the related legal claim has been decided by a jury. Fines and the Fines shareholders also contend that piercing the corporate veil “is not a power that is exercised lightly” and proceed to analyze the merits of Stephens Properties’ piercing-the-corporate-veil count. Finally, Fines and the Fines shareholders dispute the appellants’ argument that the facts underlying the legal and equitable claims are so similar that this Court might be faced with a repetitive appeal following the trial court’s resolution of the remaining equitable counts.
It has been noted that a “Rule 54(b) certification does not authorize the entry of a final judgment on part of a single claim.... ” Fullilove v. Home Fin. Co., 678 So.2d 151, 154 (Ala.Civ.App.1996) (citing Precision American Corp. v. Leasing Serv. Corp., 505 So.2d 380 (Ala.1987)). We have also observed that “Rule 54(b) is properly applied in a situation where the claim and the counterclaim present more than one claim for relief, either of which could have been separately enforced.” Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala.1987) (citing Cates v. Bush, 293 Ala. 535, 307 So.2d 6 (1975) (emphasis added)). See also Pate v. Merchants Nat’l Bank of Mobile, 409 So.2d 797, 800 (Ala.1982) (holding Rule 54(b) certification appropriate under the facts because “[ejither of these claims could have been separately enforced”).
As the appellants correctly argue, Thom holds that an attempt to pierce the corporate veil does not present a separate claim for relief. Instead, Stephens Properties’ assertion of that equitable doctrine merely furnished the means by which it sought to collect any breach-of-contract award against Fines from another source, namely the Fines shareholders. Thus, the judgment on the jury verdict as to the liability aspect of the breach-of-contract claim disposed of only a single aspect of that particular claim. Cf. Waiters v. Autry Greer & Sons, Inc., 784 So.2d 1068, 1070 (Ala.Civ.App.2000) (noting that partial summary judgment addressing only proximate causation “dispose[d] of one aspect of Waiters’s damages claim rather than completely disposing of a particular claim”). At this juncture, the breach-of-contract claim is not fully resolved because it has not yet been decided who will pay the judgment on the breach-of-contract claim — Fines or the Fines shareholders individually. Because this remaining determination is directly related to, and, in fact, is part and parcel of, the jury’s breach-of-contract award in Stephens Properties’ favor, the appellants have demonstrated that that claim is intertwined with the piercing-the-corporate-veil count in the counterclaim.

B. The Presence of a Possible Setoff

The incomplete nature of the breach-of-contract claim and the ultimate resolution of the attempt to pierce the corporate veil, discussed above, would also impact a possible setoff in this case. Specifically, in the event Stephens Properties obtains a judgment against the Fines shareholders, individually, for the $439,410 past-due rent, that judgment could be set off by the $57,000 conversion judgment against Stephens Properties, thus eliminating that *878 lesser judgment.[5]
A potential for a setoff, the appellants note, “weighs against the certification of the [underlying] [j]udgment as ... final.” The Supreme Court has stated that the “mere presence of [a nonfrivolous counterclaim] does not render a Rule 54(b) certification inappropriate.” Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 9, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). See also Scrushy v. Tucker, 955 So.2d 988, 999 (Ala.2006) (same). Similarly, “the possibility of a setoff [is not] necessarily disposi-tive of questions regarding the appropriateness of a Rule 54(b) certification.” H.P.H. Props., Inc. v. Cahaba Lumber & Millwork, Inc., 811 So.2d 554, 556 (Ala.Civ.App.2001) (Murdock, J., concurring in the result) (citing Curtiss-Wright, supra, for the proposition that the “court of appeals erred in dismissing appeal from a Rule 54(b) judgment on one of main claims merely because counterclaim remained pending that might offset judgment entered”). Nonetheless, as reflected in the five-factor analysis set out in Rosenberg, supra, although not dispositive in and of itself, the existence of a nonfrivolous counterclaim or other issue that could result in a possible setoff, such as we have here, “[is] surely not an insignificant factor” in evaluating the appropriateness of a Rule 54(b) certification. Curtiss-Wright, 446 U.S. at 12. See also Harper Sales Co., 742 So.2d at 192 (determining that trial court’s Rule 54(b) certification was inappropriate because the “later resolution of [the remaining] counterclaim could affect the amount of damages awarded”). The potential for a setoff affecting the breach-of-contract judgment in this case weighs against the Rule 54(b) certification.

C. Whether There Was “No Just Reason for Delay”

Finally, the appellants contend that, although in certifying its judgment as final and allowing the matter to proceed to appeal the trial court found no just reason for delay, there were no harsh effects avoided or advantage gained by an immediate appeal as opposed to allowing the case to take its ordinary course. To the contrary, they point to “miscellaneous factors” that, they say, demonstrate that “a harsh effect results to [them] ... as a result of the Rule 54(b) certification,” including the freedom of Fines and the Fines shareholders to pursue execution of their judgments.[6] Fines and the Fines shareholders, of course, dispute the harsh effects claimed by the appellants as a result of the Rule 54(b) certification.
Initially, we note the absence of any cross-appeal by Fines and the Fines shareholders related to the trial court’s denial of their Rule 60(b) motion or to the judgment against Fines in favor of Stephens Properties on the breach-of-contract claim. We further note that, although there appears to be no danger here of inconsistent results or repetitive appeals as to the same issue should we proceed with examination of the claims certified by the trial court as final, the likelihood of future appeals in this matter by the Fines shareholders exists in the event Stephens Properties is successful on its remaining claims for equi *879 table relief, or by Stephens Properties if it is not.
The possibility of a future appeal and this Court’s general disfavor of Rule 54(b) certifications, coupled with the interrelated nature of the still pending counterclaims and the potential for setoff, which potential Fines and the Fines shareholders do not dispute, convinces us that the posture of this case is not yet appropriate for Rule 54(b) certification, that accepting the trial court’s certification will simply result in appellate review in piecemeal fashion, and that there is, in fact, just reason for delay. See O’Brien, 931 So.2d at 53 (noting that “ ‘ “[ajppellate review in a piecemeal fashion is not favored, and trial courts should certify a judgment as final, pursuant to Rule 54(b), only in a case where the failure to do so might have a harsh effect” ’ ” (quoting other cases) (emphasis omitted)). Because “[t]he judgment on the jury verdict was not a final judgment, and, because of the nature of the pending [issues], could not be transformed into a final judgment by a Rule 54(b) certification,” the trial court’s Rule 54(b) certification was erroneous and is due to be set aside. Harper Sales Co., 742 So.2d at 192. In the absence of a final judgment, this appeal is due to be dismissed.
APPEAL DISMISSED.
MALONE, C.J., and STUART, PARKER, and WISE, JJ., concur.

. This violation occurred on the property where the recycling plant was located, not at the site of the proposed landfill.

. As to the two remaining counterclaims asserted by Stephens Properties, the trial *871 court’s pretrial order specifically noted: "The parties all agree that the issue of potential foreclosure of the stock and piercing the corporate veil are equitable remedies that will be addressed by the court in a post jury trial setting.”

. Stephens Properties and Stephens assert that the trial court’s Rule 54(b) certification *872 was entered "sua sponte.”

. Moreover, as noted in Opinion of the Clerk No. 54, supra, when a valid severance under Rule 21 occurs, the clerk of the trial court then dockets those severed claims as a separate case with a new civil-action number, which requires an additional filing fee by the plaintiff in the severed action. 982 So.2d at 1061 (citing Opinion of the Clerk No. 45, supra, as referenced in the Committee Comments Adopted February 13, 2004, to Rule 21, Ala. R. Civ. P.). The record before us does not suggest, and Fines and the Fines shareholders do not allege, that the clerk of the trial court docketed the allegedly severed equitable counterclaims with a new civil-action number or that Stephens Properties was required to pay a separate filing fee as to those claims. See Woods, 49 So.3d at 185 n. 4.

. Similarly, it appears that Stephens Properties' success on the judicial-foreclosure count as to Isbell's stock, which the jury found had been pledged as security for past-due rent and which the trial court’s order reflects will also be later addressed, would also affect the amount of the breach-of-contract award to Stephens Properties.

. It appears from the record that Fines and the Fines shareholders have engaged in post-judgment execution efforts; it appears that the appellants opted to forgo posting a super-sedeas bond.